

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

INTERNATIONAL MARKETING, INC.,   :    CIVIL NO. **1:CV-00-0697**
                                 :
            Plaintiff            :    (Magistrate Judge Smyser)
                                 :
      v.                         :
                                 :
COUNTERACT BALANCING             :
BEADS, INC.,                     :
                                 :
            Defendant            :

**FILED**
HARRISBURG, PA

MAR 2 8 2002

MARY E. D'ANDREA, CLERK
Per _____

### MEMORANDUM AND ORDER

This case was initiated by a complaint filed on
April 17, 2000.  On February 21, 2001, the parties consented to
proceed before a magistrate judge.  The case was reassigned to
the undersigned.  A non-jury trial of the plaintiff's claim for
injunctive relief was held on August 6 to August 9, 2001.  By
an Order of September 14, 2001, the court directed the entry of
judgment in favor of the plaintiff and against the defendant.

A complete discussion of the background, of the issues
and of the resolution of the issues is set forth in the
Memorandum of September 14, 2001.

On September 27, 2001, a Notice of Appeal was filed.
The appeal is pending.

The plaintiff filed a motion for attorney fees on October 15, 2001.  That motion was denied by Order of November 29, 2001.

The September 14, 2001 Order provides that Counteract Balancing Beads, Inc. (CBB) is "enjoined from making any statements to the public, its customers and potential customers in which it states or otherwise leads people to believe that Counteract Balancing Beads cling to the inside of a tire in a balancing position as a result of electrostatic cling."  In the court's memorandum opinion, the court found the advertising by CBB that its beads develop an electrostatic cling during tire rotation and that upon the cessation of rotation the beads remain in a static balanced position to be false advertising in violation of the Lanham Act.

On January 23, 2002, the plaintiff filed a motion for contempt, along with a brief and exhibits in support.  A brief and exhibits in opposition were filed by the defendant on February 15, 2002.  A reply brief in support of the motion was filed on March 1, 2002.

2

A hearing was held on March 12, 2002.  Exhibits (P1, P2, P3, P4, P5, P6) were admitted on behalf of the plaintiff and the defendant (D Exhs. A, B).  In addition to these exhibits, the court takes notice of the web sites at www.counteractbalancing.com/ as accessed on March 12, 2002 and March 13, 2002 by this magistrate judge and of the web site at http://www.wheelweights.com/, as further described below.  The material facts of relevance to this motion are not in dispute.

The plaintiff contends that the defendant is in contempt of the September 14, 2001 Order.  It asserts in part that Counteract has made inadequate revisions to its marketing materials for its product, Counteract Balancing Beads to remove therefrom the material false inference of electrostatic clinging.  The plaintiff asserts that CBB's advertising materials, including its brochures and its internet advertisements, continue to state and/or to imply that Counteract Balancing Beads cling to the inside of a tire in a balancing position as a result of electrostatic cling.  It asserts that CBB has changed the word "electrostatic" to the word "kinetic" in its brochure and in some of its internet advertisements, and that this change does not undo the false impression of a clinging that is electrostatically caused.  It

3

asserts that CBB's web site, at http://www.counteract-balancing.com, which presents a web user with four different options to enter more detailed portions of the web site [(1) Portuguese, (2) English (USA), (3) English (International), and (4) Italian] has eliminated references to "electrostatic cling" in only the English (USA) section and has merely changed "electrostatic cling" to "kinetic cling" in the English (USA) section.  It asserts that the change from "electrostatic cling" to "kinetic cling" on the web site and in the brochure does not cease to lead web users to believe that the beads cling to the inside of a tire in a balancing position as the result of electrostatic cling.  It also asserts that Counteract Balancing Beads is in contempt for continuing to advertise that its product is manufactured according to its United States patent (which patent describes the beads as clinging in a balancing position due to "electrostatic" cling).  The plaintiff seeks an order holding the defendant in contempt, directing the payment of a daily $1,000 fine until the defendant complies with the Order of September 14, 2001, and ordering the defendant to pay the plaintiff's costs of the motion and attorneys' fees associated with the motion.

4

Civil contempt is to be found by the court only when by clear and convincing evidence it has been established that the party charged with contempt has knowledge of a valid court order and has disobeyed the order. *Roe v. Operation Rescue*, 54 F.3d 133, 137 (3d Cir. 1995); *Harris v. City of Philadelphia*, 47 F.3d 1311, 1321 (3d Cir. 1995) ("A finding of civil contempt must be supported by clear and convincing evidence."); *A&H Sportswear Co. v. Victoria's Secret Stores, Inc.*, 134 F. Supp. 2d 668, 670 (E.D. Pa. 2001) (The court should not hold a party in contempt when there is a reason to doubt the wrongfulness of the party's conduct. Any ambiguities in the evidence are to be resolved in the favor of the party charged with civil contempt.) The purposes for the imposition of an adjudication of civil contempt and of sanctions based upon the adjudication are to enforce compliance with the order or to compensate another party for losses or damages sustained by the party as the result of the other party's contemptuous conduct. A defendant that has taken all reasonable steps to comply with a court order should not be held in contempt. *National Labor Relations Board v. Local 1291, International Longshoremen's Ass'n.*, 292 F.2d 182 (3d Cir. 1961).

5

As already noted, the material facts for purposes of this motion for contempt are not in dispute. Defendant CBB, after the September 14, 2001 Order, replaced its advertisements in some of the advertising outlets and media that it uses. Its current advertising, in those particular commercial communications and media where any change has been made, states that "Counteract Kinetic Clinging Micro-Beads" "will automatically balance the complete wheel assembly and will stabilize in the balanced position even when the vehicle is stopped and starting," that "Counteract does not have to go through a vibration and eventual balancing after every stop" and that the product has an "advantage over other internal balancing agents" in that, unlike products that "fall to the bottom of the tire every time the vehicle stops," Counteract Balancing Beads produced under U.S. Patent No. 6.128.952[1] have been found to cling to the truck tire when the vehicle is stopped." Plaintiff's Exhibit 5. "Kinetic" has been substituted in these advertisements for "electrostatic."

---

[1]In the current advertising, the Patent is described as No. 6.126.952. This is noted, but no significance is assigned herein to this inconsistency.

6

A principal focus of the scrutiny of Counteract Balancing Beads' commercial advertising communications in this motion for contempt has been its internet advertising, and has concerned its web site at http://www.counteractbalancing.com. The "Welcome" screen of the English (USA) portal and the "Welcome" screen of the English (International) portal each states that "Revolutionizing the truck tire balancing industry by offering a new, patented* superior technology (kinetic cling tire balancing) which will fulfill all of your tire balancing needs efficiently and economically. Here you will find information about our company, our product, and gain an easy way to get in contact with our representatives. Simply use the menu on the left to browse our site. Thanks again for taking the time to visit, and please feel free to contact us if you have any questions." (http://www.counteractbalancing.com/ english.htm, March 13, 2002; http://counteractbalancing.com/ international/english.htm, March 13, 2002). Here, as well, "kinetic" has been substituted for "electrostatic." Apart from the assertion that the substitution for "electrostatic" of "kinetic" does not cure the falseness of these advertisements as found by the court, the plaintiff asserts that the reference to the **patented** technology of either "electrostatic" or "kinetic" cling tire balancing wrongly

7

implies a finding by a governmental agency of the technical effectiveness or scientific validity of the product and that it is a reference to and an implicit endorsement of the patent description of the product that describes the product as remaining in a balancing position as the result of electrostatic clinging.

We will first address whether the defendant's substitution of the phrase "kinetic cling" for the phrase "electrostatic cling" is in violation of the September 14, 2001 Order.

We find that the substitution of the phrase "kinetic cling" for "electrostatic cling" in the context here presented leads the public, customers and potential customers to believe that the beads cling as a result of electrostatic forces. That is so because kinetic forces, the forces of motion, do not by any theory either asserted by the defendant or conceivable in these circumstances, other than the theory of electrostatic attraction, result in the adhesion of glass beads to a rubber surface in contradiction of the forces of gravity.[2]  It is so,

_____

[2]The court had observed in the September 14, 2001 Memorandum that the beads in

(continued...)

8

also, because the defendant had used substantially the same advertising format to the same (trucking) industry and consumers and potential consumers to communicate a claim of an electrostatically caused clinging.

CBB argues that "kinetic" has a different meaning than "electrostatic." It is true that "kinetic" has a different meaning than "electrostatic." "Kinetic" means "relating to kinetics or to the motion of material bodies and the forces and energy associated therewith." "Electrostatic" means "of or relating to static electricity." The substitution of "kinetic" for "electrostatic" does not change the substance of CBB's representation, however, if the advertisement continues to represent that the beads achieve a static balancing position due to electrostatic attraction.

---

[2](...continued)
some photographs and videotape demonstrations appeared to cling. This clinging was the result, in the court's view, most likely of a combination of moisture, dirt, beads, centrifugal force, evaporation and perhaps some adhesive substance originating in the tire liner or from tire sealing compound within the tire cavity. The court found that it was not the result of electrostatic cling. If the defendant's current advertising uses findings of beads adhesion, acknowledged by the court but found by the court not to be attributable to electrostatic forces, in combination with the substitution of "kinetic" for "electrostatic," it implicitly either (1) persists in the electrostatic cling theory, (2) adopts a theory like the court's of a coagulation, evaporation and adhesion, or (3) has another articulable theory. The advertisements clearly do not adopt a coagulation, evaporation and adhesion theory to explain observed instances of clinging. The evidence and argument at the March 12, 2002 hearing make it clear that the defendant does not have another articulable theory.

9

As we stated in the Memorandum of September 14, 2001, at p.3:

> The beads product is marketed with the representation that, once the tire begins to roll, the beads gradually move through inertia in the opposite direction of the up and down motion and automatically counteract the imbalance, balancing the tire.  It is represented in CBB's advertisements that the beads remain in this balanced position even when the vehicle is in a stopped position, due to a phenomenon described as "electrostatic cling."

The current advertising of CBB with the word "kinetic" substituted for the word "electrostatic" continues to represent that the motion of the beads in the tire during truck operation results in a clinging effect as between the beads and the inner tire walls.  CBB does not provide any explanation for how the public, customers and potential customers, in the context in which CBB's past electrostatic cling advertising was presented and current kinetic cling advertising is presented, would not believe that CBB's claim continues to be that the beads adhere due to electrostatic attraction.

CBB asserts that one would not normally equate something having to do with motion with something relating to static or non-moving electric charges.  Although in many

AO 72A
(Rev.8/82)

contexts we would not, as CBB asserts, "normally equate something having to do with 'motion' with something that relates to 'static' or non-moving electric charges," in the context of a theory that kinetic forces in a tire have resulted upon the cessation of motion in the clinging of glass beads to an inner tire wall it is normal to deduce that the claim is a claim of electrostatic clinging.  That is normal because it is normal for the normal mind to seek a rational, scientific explanation for a putative clinging phenomenon that defies the normally known scientific principle that, due to gravity, objects fall.  The electrostatic cling explanation may on its face have appeared to be a rational, scientific explanation, but it was disproven.  Kinetic energy and kinetic forces of course constituted a part of the electrostatic forces theory. But "kinetic energy" standing alone, without the added concept of electrostatic charging, is not a theory that can rationally support a claim of clinging.  It is noted that counsel for CBB on March 12, 2002, asked to do so, provided no rational explanation for "kinetic" clinging.  Unless the assertion of kinetic clinging gives rise to a connotation of electrostatic clinging, it comes across in the context of these advertisements as nonsense.  But as a substituted phrase in these advertisements, accompanied by depictions of beads inside

11

tires that are represented as having been distributed to a
balancing position and to have become statically fixed in such
a balancing position, and in an environment of truck stops,
tire stores and truck drivers where the concept of
electrostatically clinging balancing beads had been introduced
by earlier false advertising, "kinetic cling" is likely in the
normal mind to connote electrostatic clinging.  Electrostatic
causation may although not expressly stated be supposed.

Intent need not be proven to prove a Lanham Act
violation or to prove civil contempt, but intent and motive are
relevant.  In considering this contempt motion and the question
of the intent and purpose with which Counteract Balancing Beads
has substituted "kinetic" for "electrostatic," we have
scrutinized the advertisements including quoted endorsements of
customers and trucking and tire industry representatives.

The extent of integrity that underlies the substitution
in the defendant's advertisements from a claim of
"electrostatic" cling to a claim of "kinetic" cling is manifest
within the advertisements themselves.  If we are to attribute
honesty and integrity to Counteract Balancing Beads, then
Pierre Warren, Jim Reed, Jeff Prier, Richard Harper and Albert

12

M. Sealy, III, each of whom is quoted in the advertisements and each of whom has provided one quote in which he states that the cling is "electrostatic" and another otherwise verbatim quote in which he states that the cling is "kinetic," each considers one term to be appropriately substituted for the other. The one quote of each (using "electrostatic") is used in one set of advertisements; the other (using "kinetic") is used in the other set of advertisements. The undersigned finds that it is extremely unlikely that each and every one of these persons who had supplied an endorsement referring to "electrostatic" cling subsequently has supplied an otherwise identical endorsement referring to "kinetic" cling. Thus, it is inferred that Counteract Balancing Beads has changed the quotations attributed to these individuals. From this inference, it is further inferred that the change to the term "kinetic" from the term "electrostatic" was motivated by an objective of preserving the impression of a product that clings by way of electrostatic forces, and that it was in keeping with this motivation to change the form and presentation of the advertisement as minimally as possible and to substitute a term for "electrostatic" that would preserve the concept of an electrostatically caused clinging without using the word "electrostatic."

13

CBB's response to the September 14, 2001 Order has been to construe and parse the language of the Order in such a manner as to be seen to have taken remedial action. But it did not take such action as might alter the substance of the advertisements and might change the beliefs of the public, customers and potential customers that the beads become charged through tire rotation with an energy or force that is responsible for an attraction as between the beads and the tire walls of such a strength as to defy gravity and to keep the beads statically positioned against the tire walls after the tire rotation has stopped.

We conclude that the references to "kinetic clinging" in these advertisements lead the public and customers and potential customers to believe that the beads cling to the inside of a tire in a balancing position as a result of electrostatic cling. These references in the brochures, internet advertisements and any other advertising media are in violation of the September 14, 2001 Order.

14

Next, we address issues relating to references in the advertisements to the CBB Patent, Patent 6,128,952.[3]

The sentence in these advertisements stating that the beads produced under the Patent have been found to cling to the truck tire when the vehicle is stopped, as used in the context of this advertisement, is not reasonably construed as claimed by CBB to be "notice to potential [patent] infringers."  In the context of these advertisements, the references to the Patent implies that the clinging is the result of electrostatic cling as described in the patent application.  The references to the Patent in combination with the reference to the beads clinging is in violation of the September 14, 2001 Order.

We next address the issues involved in the continuation of the enjoined references to "electrostatic" clinging in the international internet advertising.  The defendant argues that the court exceeds its lawful jurisdiction if it construes its order to enjoin internet advertising directed by CBB at other countries by its web page's optional portals.  We note two simple truisms at the outset:  that the world wide web is world

---

[3]In some of the advertisements it is referred to as No. 6,126,952.

15

wide and thus all internet advertising is international and thus accessible by the United States public, customers and potential customers of CBB; and that the Order of September 14, 2001 did not address any particular advertising media or make reference to any particular geographic areas, but did order CBB to cease a particular kind of advertising.

The scope of application of the September 14, 2001 Order is the United States of America.  The Order of September 14, 2001 addressed no concern with advertising by CBB in nations other than the United States of America.  The motion now before the court involves claims in part that the changes made to some of CBB's advertisements do not comply with the September 14, 2001 Order, and in part that CBB has continued to perpetuate unchanged advertisements that through the internet are present in the United States.  The defendant asserts that the court, if it were to purport to have jurisdiction to address any other than the "English (USA)" portal of its web site, would be acting outside its jurisdiction.

A district court may grant an extraterritorial injunction only insofar as it is carefully crafted to prohibit only those foreign uses of advertising in violation of the

16

Lanham Act that are likely to have significant effects on

United States commerce. *Sterling Drugs, Inc. v. Boyer AG*, 14

*F.3d 733 (2d Cir. 1994)*:

> It is well established that United States
> courts have jurisdiction to enforce the Lanham
> Act extraterritorially in order to prevent harm
> to United States commerce. The Supreme Court
> divined such a Congressional intent to project
> the Act extraterritorially in *Steele v. Bulova
> Watch Co., Inc.* 344 U.S. 280, 73 S.Ct. 252, 97
> L.Ed. 319 (1952). In that leading case, the
> Court applied the Act to prevent a U.S. citizen
> from selling fake "Bulova" watches in Mexico on
> the ground that his use of the "Bulova" name
> diverted sales in Mexico and the United States
> from the American trademark holder. But courts
> have also recognized limits on the application
> of the Lanham Act beyond our borders. In
> *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234
> F.2d 633 (2d Cir.), *cert. denied*, 352 U.S. 871,
> 77 S.Ct. 96, 1 L.Ed.2d 76 (1956), an American
> clothing manufacturer that sold women's
> underwear in the U.S. and Canada using its
> "Vanity Fair" trademark sought to enjoin a
> Canadian retailer from selling women's
> undergarments using the same mark in Canada.
> We dismissed the claims against the defendant
> because it was a Canadian corporation using a
> mark to which it held presumably valid
> trademark rights in Canada. We explained the
> Supreme Court's application of the Lanham Act
> extraterritorially in *Steele v. Bulova* as
> resting on three factors: (1) whether the
> defendant's conduct has a substantial effect on
> United States Commerce; (2) whether the
> defendant is a citizen of the United States;
> and (3) whether there exists a conflict between
> defendant's trademark rights established under
> foreign law, and plaintiff's trademark rights
> established under domestic law. Id. at 642.

17

14 F.3d at 745-746.  In this case, the injunction that the court has entered is not and does not purport to be an injunction against advertising in other countries.  It is an injunction against advertising in the United States.

CBB is a Canadian corporation, and presumably places its advertisements onto the internet in Canada.  CBB asserts that it complied with the September 14, 2001 Order by revising its advertising materials distributed in the United States, including its web site and printed materials.

One of the *Steele v. Bulova* factors is whether there is a conflict of laws.  Canadian law like United States law prohibits false advertising.  The Canadian Competition Act, provides in material part that:

> 52. <u>False or misleading representations</u>.
> No person shall, for the purpose of promoting, directly or indirectly, the supply or use of a product or for the purpose of promoting, directly or indirectly, any business interest, by any means whatever, knowingly or recklessly make a representation to the public that is false or misleading in a material respect.

[R.S. 1985, c. C-34].

18

The determinative factor here is the substantiality of the effect of CBB's conduct on United States commerce. CBB's position that its internet advertising does not have a substantial effect on United States commerce, because its web site "gate page" or "portal page" directs users based upon their country of origin, does not make a persuasive showing that CBB's advertising does not have a substantial effect upon United States commerce. In part, that is so because web users do not restrict their web use to going to previously identified web sites and following the instructions presented there. An internet user would be as likely to look for a product such as balancing beads or wheel weights by using a words and phrases search as by going directly to a particular company's web page.

On March 12, 2002, during the hearing on the motion of the defendant for an order of contempt, this magistrate judge inquired of CBB's counsel what an internet user would find if a web search for "counteract balancing beads" were conducted. After the hearing, several internet searches were conducted. The first used the phrase "counteract balancing beads" and the second used "balancing beads." "Balancing beads" yielded, as a first listing (using Netscape, Lycos and Google), the web site http://wheelweights.com. At this web site, the Counteract

19

Balancing Beads product is advertised in the "electrostatic cling" manner specifically enjoined by this Court's September 14, 2001 Order. This web site includes a presentation of Roger LeBlanc, the President of Counteract Balancing Beads, Inc. See, http://wheelweights.com/balancing-beads/htm (Roger LeBlanc, Inventor and President). It is presented as the web page of "Wheel Weights International Corporation." A "wheel weights" web search also leads to this web site. Using Lycos, the Wheelweights web site is a "Sponsored Search Listing," and the Counteract Balancing Beads Splash Page is the second listing. Using Google, the Wheelweights web site is the first listing and the Counteract Balancing Beads Splash Page is the second listing.

In consideration of the fact that an internet search for "balancing beads" or for "wheel weights" will lead the searcher directly to the Wheel Weights International Corporation web site containing the enjoined "electrostatic cling" advertisements and secondarily to CBB's web site where the searcher may elect the enjoined version or the amended version, it is readily inferred that the advertisements of the Counteract Balancing beads have a significant effect upon United States commerce.

AO 72A
(Rev 8/82)

In the absence of a showing or a contention by Counteract Balancing Beads of no United States sales of its product, there is no reasonable basis to consider its English language internet advertisements not to have a substantial effect upon United States commerce. The Portuguese and Italian language portals probably do not have a substantial impact upon United States commerce.

By way of summary and conclusions, we find that the references to "kinetic" cling are in violation of the September 14, 2001 Order. The references to the Patent in conjunction with an assertion that the beads have been found to cling to the inside of a tire are in violation of the September 14, 2001 Order. All English language web site references under the defendant's control to "electrostatic cling," "kinetic cling," or to the Patent when such Patent reference includes an assertion that the beads cling to the inside of a tire, are in violation of the September 14, 2001 Order. We make no finding as to whether there is a substantial impact on United States commerce as to the Counteract Balancing Beads' portals "En Portuguese" and "In Italiano."

21

We add this observation.  Whereas in the context of the plaintiff's motion for attorneys' fees after the adjudication in favor of the plaintiff we found there not to be evidence of bad faith on the part of the defendant, and determined that President LeBlanc of Counteract Balancing Beads might have held a sincere belief in the validity of his theory of electrostatic clinging, there is not presently a basis for a finding of good faith.  We understand that Counteract Balancing Beads may believe the court to have been wrong in the finding that the electrostatic clinging theory is not scientifically valid.  But accepting that determination as valid unless reversed on appeal, the substitution of "kinetic" for "electrostatic" is not made in good faith.  We view it as having been done in bad faith.  Given the opportunity to provide some thoughtful explanation for it and not having done so, CBB must be seen, by the clear and convincing evidence that is manifest in a patently superficial change of a word, to be in disobedience of the Order of September 14, 2002.

The motion of the plaintiff is granted.  The defendant is held to be in contempt of the Order of September 14, 2001. The defendant shall forthwith comply with the Order of September 14, 2001.

AO 72A
(Rev.8/82)

The defendant is directed, as required by the Order of September 14, 2001, to remove from all advertising materials which are available or are likely to become available to consumers in the United States of America all references that state or imply that any forces created by the rotation of a tire cause the Counteract Balancing Beads to cling, adhere, stick or position themselves adjacent to the inside surface of a tire when the tire is not in motion. This includes, but is not limited to, references to or descriptions of "kinetic cling" or "electrostatic cling" and references to Patent No. 6,128,952 or to any other patent which includes a description of "electrostatic cling."

The defendant shall close any web site within its control unless and until the web site content complies with the preceding paragraph, or unless and until it eliminates access to users in the United States by requiring the entry of a user name and password to enter the web site, issuing user names and passwords only by mail and making no user name or password available to any person or entity located in the United States by any means including but not limited to the mailing of user names or passwords to any address located in the United States of America.

23

The defendant is directed to pay a coercive sanction of $1,000 per day to the court until there is compliance with the Order of September 14, 2001.  The defendant shall pay the $1,000 per day sanction to the Clerk of Court, and shall commence payments on May 8, 2002.

The defendant is directed to pay the plaintiff's costs and attorneys' fees associated with this motion.  The plaintiff shall file affidavits evidencing the amount of costs and attorney fees.

J. Andrew Smyser
Magistrate Judge

Dated:   March  28 , 2002.

24

AO 72A
(Rev.8/82)