**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

INTERNATIONAL MARKETING, INC.,  :
                                :   C.A. No. 1:CV 00-0697
        Plaintiff,               :
                                :
    v.                           :   (Judge Smyser)
                                :
COUNTERACT BALANCING BEADS, INC. :
                                :
        Defendant.               :

FILED
HARRISBURG, PA
APR 0 8 2002
MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

**BRIEF OF COUNTERACT BALANCING BEADS
IN SUPPORT OF MOTION FOR STAY PENDING APPEAL**

Defendant Counteract Balancing Beads, Inc. ("CBB" or "defendant") submits this brief in support of its motion under Fed.R.Civ.P. 62 for a stay of the March 28, 2002 Order and the previously entered September 14, 2001 Order, pending resolution of the appeals of both Orders (the "Motion").

CBB contends that substantial and serious legal questions exist regarding the specific scope and application of the September 14 Order, and the revisions to that Order as provided in the March 28 Order. Those legal questions warrant the stay or suspension of the March 28 Order and September 14 Order pending resolution of the appeals.

Statement of Relevant Background Facts

1. Procedural History

During August 6 through August 9, 2001, a bench trial was conducted before the Court to hear plaintiff International Marketing, Inc.'s ("IMI") complaint of false advertising alleged against CBB. Following the bench trial, on September 14, 2002, the Court filed its Memorandum Opinion and entered an Order (the "September 14 Order") permanently enjoining CBB "from making any statements to the public, its customers and potential customers in which it states or otherwise leads people to believe that Counteract Balancing Beads cling to the inside of a tire in a balancing position as a result of electrostatic cling." (*See* September 14, 2001 Order, D.I. 81).

Following entry of the September 14 Order, CBB revised and amended its advertising to ensure that all advertising directed to the United States, comply with the September 14 Order. Towards that end, CBB eliminated references to electrostatic cling by substantially revising its four-page fold out brochure; substantially reforming its Internet website to direct U.S. customers to updated and revised U.S. advertising website pages; and advising its several U.S. distributors of the September 14, 2001 Order and that their use of prior CBB advertising should be revised according to

the updated CBB advertising materials. CBB also filed a Notice of Appeal of the September 14 Order to the Third Circuit Court of Appeals.

On January 23, 2002, IMI filed a Motion For Contempt alleging that CBB had violated and was continuing to violate the September 14 Order by (a) distributing a brochure attached as Exhibit G to IMI's Opening Brief; (b) providing a website that in the advertising directed to non-U.S. customers had "drop-down" windows identifying U.S. distributors of the CBB beads product; (c) providing a notice in the CBB advertising that the beads product is manufactured under and protected by U.S. Patent No. 6,128,952; and (d) labeling its beads product with the mark "kinetic cling beads" instead of "electrostatic cling beads."

IMI eventually conceded that it was incorrect in its allegations that CBB was (a) still distributing a brochure attached as Exhibit G to IMI's Opening Brief; or (b) still providing a website that in the advertising directed to non-U.S. customers had "drop-down" windows identifying U.S. distributors of the CBB beads product.

CBB acknowledged with respect to the contempt motion that as part of its advertising, CBB was (a) providing a notice in its advertising that the beads product is

manufactured under and protected by U.S. Patent No. 6,128,952; (b) labeling its beads product as "kinetic cling beads" instead of "electrostatic cling beads;" and (c) providing, as part of its Internet website, specific pages directed to U.S. customers and different pages directed to non-U.S. customers. CBB contends that such advertising complies with the provisions of the September 14 Order.

On March 12, 2002, the Court held an evidentiary and legal argument hearing to consider IMI's contempt motion.

2.  <u>The March 28 Civil Contempt Order</u>

On March 28, 2002, the Court entered an Order (the "March 28 Order") finding CBB in civil contempt and ordering CBB to comply with the September 14 Order by (a) removing "from all advertising materials which are available or are likely to become available to consumers in the United States of America all references that state or imply that <u>any forces created by the rotation of a tire cause the Counteract Balancing Beads to cling, adhere, stick or position themselves adjacent to the inside surface of a tire</u> when the tire is not in motion;" (emphasis added); (b) by shutting down its foreign website "unless and until [CBB] eliminates access to users in the United States by requiring the entry of a user name and password to enter the web site, issuing user names and passwords only by mail and making no

user name or password available to any person or entity located in the United States by any means including but not limited to the mailing of user names or passwords to any address located in the United States of America;" (c) commencing on May 8, 2002, to pay a sanction of $1,000 per day to the court until there is compliance with the September 14 Order; and (d) paying the plaintiff's costs and attorney's fees associated with IMI's motion for contempt.

On April 2, 2002, CBB filed its Notice of Appeal of the March 28, 2002 civil contempt order. Accordingly, both the September 14 and March 28 Order are now under appeal to the Third Circuit Court of Appeals.

Argument

    A.   <u>The Standard For Obtaining A Rule 62 Stay Motion</u>

The analysis to be undertaken for obtaining a stay under Fed.R.Civ.P. 62(c) involves consideration of four factors. *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113 (1987); *Standard Havens Products, Inc. v. Gencor Industries, Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990). The four factors to guide the court consist of (1) whether there is a showing of a likelihood of success on the appeal; (2) whether there is a threat of irreparable harm to the movant

if the stay is not granted; (3) whether the issuance of the stay will substantially harm the non-movant if the stay is entered; and (4) where the public interest lies. *Hilton*, 481 U.S. at 776, *Standard Havens*, 897 F.2d at 512; see also *Washington Speakers Bureau, Inc. v. Leading Authorities, Inc.*, 49 F.Supp. 2d 496, 499 (E.D. Va. 1999).

With respect to the first factor, courts have recognized that the movant need not prove "that its chances of prevailing on appeal are greater than fifty percent." *Odetics, Inc. v. Storage Technology Corp.*, 14 F.Supp. 2d 785, 798 (E.D. Va. 1998). Instead, "the true test is whether the movant has made a substantial case on the merits. In other words, has the movant presented a serious and substantial legal question." *Desktop Images, Inc. v. Ames*, 930 F.Supp. 1450, 1452 (D.Colo. 1996); see also *E.I. DuPont de Nemours & Co. v. Phillips Petroleum*, 835 F.2d 277, 278 (Fed. Cir. 1987).

Courts have applied a sliding scale approach for evaluating the four factors. Where there is a strong showing of serious and substantial legal questions, the less compelling the showing need be for the remaining factors. Any one of the four factors, "taken individually, are not

dispositive," but must be considered in view of the legal questions raised. *Standard Havens*, 897 F.2d at 513.

Upon due consideration of the four stay factors, CBB contends the analysis strongly favors entering a stay or suspending the March 28 and September 14 Orders pending resolution of the substantial issues on appeal.

> B. The Issues On Appeal Relating To The March 28 Order And September 14 Order Raise Serious And Substantial Legal Questions About The Scope And <u>Application Of The September 14 Order</u>
>
> 1. <u>The March 28 Order either has expanded the scope of the September 14 Order or has rendered the September 14 Order ambiguous</u>

The injunction entered by the September 14 Order appeared to be specific. Having found that the CBB Beads do cling under certain circumstances in normal operating conditions, the September 14 Order required CBB to cease "making any statements to the public, its customers and potential customers in which it states or otherwise leads people to believe that Counteract Balancing Beads cling to the inside of a tire in a balancing position *as a result of electrostatic cling*." (*See* September 14, 2001 Order (emphasis added)). CBB attempted to comply with the September 14 Order by renaming its product and by not making any statements that show or suggest the CBB beads cling to

the inside of a tire *due to a buildup of an electrostatic charge* on the beads.

In contrast to the September 14 Order, the March 28 Order does not provide that CBB is enjoined from making statements leading people to believe the beads cling *as a result of electrostatic cling.* Instead, the March 28 Order provides that CBB is enjoined from making any statements that the beads cling *due to any force.* Thus the March 28 Order (a) substantially expands the scope of the September 14 Order by prohibiting CBB from claiming that its beads cling, and (b) finds CBB in contempt for not complying with the new Order precluding CBB from *making statements that imply any forces created by the tire rotation cause the beads to cling* to the inside of the tire when the tire is not in motion.

According to the March 28 Order, the September 14 Order has either been substantially expanded in scope, or has been rendered ambiguous by the new provisions. Under either analysis, there are substantial and serious legal questions regarding the scope of the September 14 injunction. First, because the September 14 Order has been appealed, that order cannot thereafter be modified or amended pending the appeal. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58,

103 S.Ct. 400, 402 (1982). Second, an order "which is said to have been violated must be specific and definite." *Eavenson, Auchmuty & Greenwald v. Holtzman*, 775 F.2d 535, 544 (3d Cir. 1985).

> 2. Substantial legal questions are raised by the prohibition of CBB from referring to the fact that the beads product is produced under a valid United States patent

The Court's finding that the sentence providing "Counteract Balancing Beads produced under U.S. Patent No. 6,126,952 (sic) have been found to cling to the truck tire when the vehicle is stopped," in CBB's advertising materials constitutes a violation of its September 14, 2001 Order, raises substantial and serious legal questions about the right of CBB to provide notice to the public that its product is protected under the '952 patent.

As previously briefed and argued, under 35 U.S.C. 287, a patentee has an obligation to give notice to the public, including potential infringers, that its product is protected by an issued and valid United States patent. See *Loral Fairchild Corp. v. Victor Company of Japan*, 906 F.Supp. 813, 816 (E.D.N.Y. 1995). The Court's conclusion that the notice of the '952 patent cannot be reasonably construed to be "notice to potential [patent] infringers," but instead "implies that the clinging is the result of

electrostatic cling as described in the patent application," raises substantial legal issues.

As apparently provided in the March 28 Order, CBB would be enjoined from sending copies of its patent to potential infringers because such activity could lead the infringer to believe that the beads cling due to an electrostatic process. Similarly, CBB appears to be precluded from marking its patent number on its beads packet, or any other containers, because a person seeing the patent number, and having knowledge that the beads do cling, could conclude that the beads cling due to the process explained in the '952 patent.

Taken to its logical conclusion, under this analysis, CBB may not even mention that its beads product is patented to anyone in the trucking industry without violating the March 28 Order. These results are contrary to the law and raise substantial and serious legal questions regarding the application of the March 28 Order precluding CBB from providing notice of its '952 patent.

       3.    The Court's sua sponte search of the Internet, development of evidence outside of that presented by the parties and drawing inferences from that extrinsic evidence against CBB constitutes a denial of due process

Following the submission of briefs and the conclusion of the oral hearing, the Court undertook, *sua sponte*, an Internet search for cites that may advertise CBB's Balancing Beads. As a result of this search the Court found one website provided by a company operating under the name Wheel Weights International Corporation ("Wheel Weights"). Wheel Weights apparently advertises the CBB Beads along with the proscribed electrostatic cling explanation. The apparent inference drawn from the Court's research, is that the Wheel Weights website is a subterfuge created by CBB to evade the September 14 Order. Indeed, the reference to the Wheel Weights website appears to be at least part of the basis for concluding that CBB has acted in bad faith subsequent to the September 14 Order. Based upon these inferences, the March 28 Order awards attorney's fees to IMI.

If this information or evidence had been raised by IMI prior to the March 12 hearing, or if CBB was made aware that such extrinsic information was being considered by the Court, CBB would have immediately shown that Wheel Weights Corporation is a major U.S. company, and an independent distributor of CBB's products in the United States. CBB and Wheel Weights are separate, distinct and unrelated corporations. Neither CBB nor any of its principals,

officers or agents have any control over Wheel Weights. Similarly, Wheel Weights has no control over CBB.

The entry of contempt sanctions against CBB for any website advertising by Wheel Weights is only proper if Wheel Weights (a) is aware of the order, and (b) CBB is acting in concert with Wheel Weights as a means to avoid the order. *See* Fed.R.Civ.P. 65(d). Moreover, negative inferences drawn from the finding of the Wheel Weights website, or any other website advertising CBB's Beads product, without more, are contrary to the recognized standard for reviewing a contempt motion.

As held by the Third Circuit, any questions or ambiguities relating to any of the contempt standards elements should be resolved in favor of the party charged with contempt. *Harris v. City of Philadelphia*, 47 F.3d 1342, 1350 (3d Cir. 1995); *A&H Sportswear Co., Inc. v. Victoria's Secret Stores, Inc.*, 134 F.Supp.2d 668, 670, 58 USPQ2d 1440, 1443 (E.D. Pa. 2001). Indeed, the United States Supreme Court and the Third Circuit have held that a party should not be held in contempt "where there is ground to doubt the wrongfulness of the [defendant's] conduct." *Quinter v. Volkswagen of America*, 676 F.2d 969, 974 (3d Cir. 1982); see also *California Artificial Stone Paving Co. v. Molitor*, 113

U.S. 609, 618 (1885); *Littlejohn v. BIC Corp.*, 851 F.2d 673, 683-84 (3d. Cir. 1988).

The negative inferences apparently drawn relating to the Wheel Weights website and used to conclude CBB acted in bad faith, and in supporting an award of attorney's fees to IMI, raise substantial and serious legal questions about the proper availability of due process to CBB.

> 4. Under the present facts, extending the Court's Order to restrict CBB's advertising directed to foreign customers through the Internet raises serious questions of law

The March 28 Order requires CBB, a Canadian corporation, located in Canada, with a website server located in Canada, to limit the content of its foreign advertisements to comply with the September 14 order because certain web pages in CBB's website addressed to foreign countries are accessible from within the United States. While U.S. Courts have in limited circumstances extended their jurisdiction to control foreign commercial activities occurring through the Internet, such control has been specifically limited. The facts of this case do not support the global extension of the September 14 and March 28 Order to CBB's Internet advertisements directed to a foreign audience merely because such advertisements may be accessed from within the United States. See *Yahoo!, Inc. v. La Ligue*

*Contre Le Racisme et L'Antisemitisme*, 169 F.Supp. 2d 1181, 1193-1194 (N.D.Ca. 2001) (refusing to enforce a French Court order to shut down a website merely because a French citizen could access the website through the Internet and view material that was illegal under French law).

The United States Supreme Court has held that the Lanham Act may be applied to enforce conduct of a defendant outside of the United States where (1) the defendant is a citizen of the United States; (2) there exists no conflict between the defendant's rights established under foreign law and the Lanham Act based order, and (3) the defendant's conduct has a substantial effect on United States commerce. *Steele v. Bulova Watch Co.*, 344 U.S. 280, 73 S.Ct. 252 (1952). The lack of any one of the above elements is critical, while the lack of any two is fatal to the extraterritorial application of the Lanham Act. *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 643 (2d Cir. 1956); *International Café, S.A.L. v. Hard Rock Café International (U.S.A.), Inc.*, 252 F.3d 1274, 1276, 58 USPQ2d 1925, 1928 (11th Cir. 2001). CBB contends the *Steele v. Bulova* factors do not support such an extended application of the September 14 or March 28 Orders.

First, there is no question but that defendant CBB is a Canadian citizen, and thus the first element is not met.

Second, there is no record evidence that any part of CBB's advertisements violate any Canadian law or is proscribed in any fashion under Canadian law. The fact that a Canadian statute prohibits knowing or reckless false misrepresentations, does not, without more establish by clear and convincing evidence that there is no conflict between CBB's rights under Canadian law and the injunction imposed against CBB by the September 14 and March 28 Orders.

As noted at the March 12 hearing, CBB's Canadian and foreign advertisements are based, in part, on scientific measurements conducted at the University for Western Ontario which have identified an electrostatic charge on the clinging beads. Not only has there been no determination by a Canadian Court that CBB's advertisements violate any Canadian law, but in view of the University test results, it is highly unlikely that CBB would be found to be violating the cited Canadian statute. Accordingly, the second element is similarly not met.

The third *Steele v. Bulova* factor requires a clear and convincing showing *by IMI*, that CBB's foreign activities have a substantial impact in U.S. commerce. IMI provided

absolutely no showing or evidence that the CBB foreign web pages which may be accessed from the United States either have had or may have any, let alone a substantial, effect on U.S. commerce. As such, the third element is also not met.

Not only is there no evidence of any substantial effect on U.S. commerce, but the burden appears to have been shifted from IMI to CBB, for CBB to demonstrate, by clear and convincing evidence, that CBB's foreign activities have no substantial adverse effect on United States commerce.

Therefore, the March 28 Order raises a substantial legal question whether, under the facts of this case, the *Steele v. Bulova* analysis supports extending the Lanham Act and the September 14 and March 28 Orders to control the contents of the CBB Canadian website or deny worldwide access to the CBB Canadian website simply because someone within the United States may access web pages directed to foreign customers.

As explained by the Third Circuit in *American Civil Liberties Union v. Reno,* 217 F.3d 162, 176 (3d Cir. 2000), substantial legal questions are raised where any court in any country may curtail worldwide Internet access in order to satisfy the laws of that country. The Third Circuit observed that under such a scenario, essentially "every

Web communication [would be forced] to abide by the most restrictive" standard. *Reno*, 217 F.3d at 176. Such a restriction will directly and detrimentally effect Internet commerce.

For at least these reasons, there are substantial and serious legal questions as to the extraterritorial application of the September 14 and March 28 Orders given the record evidence and facts of this case.

> C. CBB Will Be Substantially Harmed If
>    The Requested Stay Is Not Granted

If the requested stay is not entered, CBB will be forced to (1) cease providing notice that its product is protected by a valid U.S. patent; (2) cease using its trademark "kinetic cling beads™", and either (3) shut down its website; or (4) cease advertising its product internationally except as may possibly be permitted in the United States.

As provided by the March 28 Order, but not in the September 14 Order, CBB cannot refer to the '952 patent protecting its product. U.S. patent law provides that a patent owner is permitted to provide notice to the public that his product is protected by a U.S. patent. 35 U.S.C. § 287. If CBB is forced to remove any reference to the '952 patent on the beads packaging or materials provided with the

beads product, a very real threat of harm to CBB exists because CBB may be prevented from recovering infringement damages.

The March 28 Order also proscribes CBB from using it's new trademark "kinetic cling beads™". This new injunction expands the scope of the September 14 Order and will cause substantial harm to CBB through the loss of business good will.

The March 28 Order also requires that CBB close its website, or revise its international advertising to that which may possibly be permitted in the United States. Under either option, shutting down the CBB website, or imposing a U.S. standard upon foreign advertising, prevents CBB from advertising its product on the Internet to foreign customers or potential foreign customers, as permitted under foreign laws. Such drastic steps clearly threaten substantial and irreparable harm to CBB's commercial activities.

For at least these reasons, CBB contends there is a substantial threat of irreparable harm to CBB's business if the requested stay is not granted.

    D.   <u>There Has Been No Showing Of Any Harm To IMI If The Requested Stay Is Granted</u>

CBB contends that there is no evidence of any harm to IMI if the requested stay is granted. CBB notes that IMI

has submitted no evidence of any harm to its business, sales or reputation as a result of any advertising by CBB. In view of the lack of any evidence showing any harm or loss of business relating to any advertising by CBB in foreign countries or directed to foreign countries, CBB contends that this factor supports granting the requested stay.

    E.   The Public Interest Is Served
         By Granting The Requested Stay

CBB contends that the public interest is directly served by the entry of the requested stay of the March 28 and September 14 Orders. First, the public interest in knowing whether products commercialized in the United States are protected by U.S. patents has been repeatedly recognized by the courts. *Loral Fairchild Corp. v. Victor Co. of Japan, Ltd.*, 906 F.Supp. 813, 816 (E.D.N.Y. 1995). Because the March 28 Order, and the September 14 Order as revised by the March 28 Order, preclude CBB from providing notice to the public of its patent and patented product, as permitted under U.S. patent law, the public interest is served by suspending the orders pending resolution of the appeals.

Similarly, for the reasons presented above, the public interest is served by there being free access to the Internet pending a decision of the appellate court relating

to the propriety, scope, interpretation and application of the September 14 Order and the March 28 Order.

Conclusion

For the reasons stated herein, defendant CBB respectfully requests that this Court enter an Order suspending or staying the enforcement of the March 28 Order and the September 14 Order pending resolution of the appeals of both of the Orders.

Dated: April 5, 2002

Respectfully submitted,

_____
Kevin W. Goldstein
RATNER & PRESTIA
Suite 301, One Westlakes
Valley Forge, PA 19482
(610) 407-0700

Costas S. Krikelis
RATNER & PRESTIA
Suite 209, Webster Bldg
3411 Silverside Road
Wilmington, DE 19803
(302) 479-9470

Attorneys for Defendant
Counteract Balancing Beads