ORIGINAL

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INTERNATIONAL MARKETING, INC., | : | |
| | : | C.A. No. 1:CV 00-0697 |
| Plaintiff, | : | |
| | : | |
| v. | : | (Magistrate Smyser) |
| | : | **FILED** |
| COUNTERACT BALANCING BEADS, INC. | : | HARRISBURG, PA |
| | : | |
| Defendant. | : | APR 17 2002 |
| | : | |

MARY E. D'ANDREA, CLERK
Per _____
    Deputy Clerk

**REPLY BRIEF OF COUNTERACT BALANCING BEADS IN
FURTHER SUPPORT OF ITS MOTION FOR A STAY PENDING APPEAL**

Defendant Counteract Balancing Beads, Inc. ("CBB" or "defendant") submits this reply brief in further support of its motion under Fed.R.Civ.P. 62 for a stay of the March 28, 2002 Order and the previously entered September 14, 2001 Order, pending resolution of the appeals of both Orders (the "Motion").

In view of the revisions incorporated into the September 14 Order, and the substantial and serious legal questions raised regarding the scope of that Order and the current March 28 Order, CBB contends a stay or suspension of the March 28 Order and September 14 Order pending resolution of the appeals is warranted.

Argument

    A.   The Standard For Considering A Motion
          For A Rule 62 Stay Is Not Applied Rigidly

While both IMI and CBB agree on the general standard for reviewing whether a Rule 62 stay is warranted, IMI improperly views that standard as being rigid. As held by the U.S. Supreme Court, the Court of Appeals for the Federal Circuit, and several District Courts, the "likelihood of success in the appeal is not a rigid concept." *Standard Havens Products, Inc. v. Gencor Industries, Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990).

As explained by the U.S. Supreme Court in *Hilton v. Braunskill*, 481 U.S. 770 (1987), "the traditional stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid rules." *Hilton*, 481 U.S. at 777; see also *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F. 2d 653, 658 ($3^d$ Cir. 1991). The U.S. Supreme Court further explained that the moving party may either establish that it has a strong likelihood of success on the merits, or if it can otherwise "demonstrate a *substantial case* on the merits," provided the other factors militate in favor of the movant, then the entry of a stay is proper. *Hilton*, 481 U.S. at 778 (emphasis added).

CBB contends that it has established a substantial and serious case on the merits by the issues raised in its opening brief in support for this motion for a stay. Moreover, CBB contends that the probability of success on the merits is high, in view of the application of established law to the issues raised, and for the reasons presented in CBB's opening brief. For these reasons, the entry of a stay pending the appeal is warranted. In addition, in view of the highly unsettled state of the law regarding control of the Internet, and the broad prohibitions imposed by the March 28 Order on a foreign citizen's foreign commercial activities via the Internet, as a minimum, the requested stay would maintain the status quo while the Third Circuit determines the propriety and scope of the contempt order and permanent injunction.

    B.    Ambiguities In An Injunctive Order Are To Be Interpreted In Favor Of The Party Against Whom The Order Is Issued; Contempt May Not Be Found Where An Order Is Ambiguous

The fact that IMI acknowledges that the September 14 Order did not specifically address the revised advertising by CBB, including the notice of the CBB patent and the changed name of the CBB product, and that the March 28 Order interpreted the September 14 Order, establishes that the two

Orders either provide different prohibitions, or that the September 14 order is ambiguous.

The September 14 Order entered by the Court provides that CBB is to cease "making any statements to the public, its customers and potential customers in which it states or otherwise leads people to believe that Counteract Balancing Beads cling to the inside of a tire in a balancing position as a result of electrostatic cling." No matter how much IMI may wish to repeat and quote the language "or otherwise leads people to believe," the Order was specific in that it related to "electrostatic cling." The September 14 Order did not provide that CBB could not state that its beads product clings. Indeed, the Court found as such.

The September 14 Order did not provide any limitation of CBB putting its U.S. patent number on its packaging or in its advertising. Similarly, the September 14 Order did not provide any limitation of CBB labeling or calling its beads product something unrelated to "electrostatic cling."

By contrast, the March 28 Order provides in pertinent part that CBB is to remove "from all advertising materials which are available or are likely to become available to consumers in the United States of America all references that state or imply that *any forces created by the rotation*

*of a tire* cause the Counteract Balancing Beads to cling, adhere, stick or position themselves adjacent to the inside surface of a tire when the tire is not in motion." (Emphasis added). The language in the September 14 Order addressing the specific scientific theory by which the beads cling, being electrostatic cling, is not present in the March 28 Order. The March 28 Order now expands the injunction of the September 14 Order to preclude CBB from providing on its advertising materials that *any force* created by the tire rotation causes the beads to cling, whether that force by electrostatic, adhesive, deformation of the tire, or simply tire rotation.

Given that the two Orders provide different prohibitions of advertising by CBB, CBB contends there is a substantial and serious question whether CBB can be in contempt of the September 14 Order. Indeed, the Third Circuit has held that obligations should not be imposed upon a party that are not unambiguously mandated by the decree itself. "Prohibited conduct will not be implied from such orders; . . . the long standing salutary rule in contempt cases is that ambiguities and omissions in orders redound to the benefit of the person charged with contempt." *Ford v. Kammerer*, 450 F.2d 279, 280 (3d Cir. 1971).

The party alleged to be in contempt of an order must be able to ascertain from the four-corners of the order precisely what specific acts are forbidden. "The Court must discern the scope of a consent judgement by review of what is within the four-corners of the consent '*not by reference to what might satisfy the purposes of one of the parties to it*'." *Harley Davidson Inc. v. William Morris D/B/A Bill's Custom Cycles,* 19 F.3d 142, 148 (3d Cir. 1994), citing *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 574 (1984) (emphasis added).

    C.    The Preclusion Of CBB From Providing Notice Of Its United States Patent, And The Extraterritorial Application Of The Lanham Act, Were Both Properly Raised

IMI also asserts that the issues relating to CBB's right to provide notice of its U.S. patent and the extraterritorial application of the Lanham Act were not properly raised before this Court. IMI misreads the briefing of CBB in support of the pending stay motion, misunderstands the current scope of the current motion and misreads the scope of the original September 14 Order.

As noted, the injunction entered by the September 14 Order did not provide that CBB was prohibited from putting its U.S. patent number on its product packaging or in any CBB advertising that may be used with CBB's packaging.

- page 6 -

Similarly, the September 14 Order did not provide that CBB, a foreign company, was prohibited from advertising in any foreign country, except as that advertising may be permitted in the United States.

Those issues were not raised prior to the entry of the September 14 Order, because they not at issue. Indeed, they were not at issue after the entry of the September 14 Order because the September 14, as interpreted by CBB, did not prohibit such conduct. An order "which is said to have been violated must be specific and definite." *Eavenson, Auchmuty & Greenwald v. Holtzman*, 775 F.2d 535, 544 (3d Cir. 1985).

Those issues were only raised when IMI filed its contempt motion. As properly stated in CBB's briefing relating to the contempt motion, and properly stated in its opening brief in support of this motion as a basis warranting a stay of the contempt order, CBB has properly raised both the patent notice issue and the extraterritorial application of the Lanham Act issue.

Interestingly, IMI appears to be confused itself with respect to the extraterritorial Lanham Act issue. On page 8, IMI argues that the issue was not raised before the Court entered the September 14 Order. Yet two sentences later IMI

concedes that the specific arguments raised by CBB in the pending stay motion, had been previously made by CBB.

IMI also attempts to narrow the reading of the March 28 Order by suggesting that CBB is not prohibited from providing notice, as permitted by U.S. patent law, to its customers and competitors that its product is protected by a U.S. patent. Yet the March 28 Order, revising the September 14 Order specifically prohibits CBB from making any "references to Patent No. 6,128,952 or to any other patent which includes a description of 'electrostatic cling.'" Even if this prohibition is limited to "advertising materials," IMI will surely argue that CBB's packaging materials for the beads product is "advertising material" if CBB maintains its valid U.S. patent number on product packaging.

Moreover, IMI has failed to acknowledge or address the obvious issues raised by CBB in which, under the March 28 Order, CBB appears to be enjoined from sending copies of its patent to potential infringers because such activity could lead the infringer to believe that the beads cling due to an electrostatic process, or from even mentioning that its beads product is patented to anyone in the trucking industry without violating the March 28 Order. As argued previously, these results are contrary to established law, raise

substantial and serious legal questions regarding the application of the March 28 Order precluding CBB from providing notice of its '952 patent, and establish a strong probability that their resolution will, in whole or in part be in favor of CBB.

Conclusion

For the reasons stated herein, as well as the reasons and arguments presented in CBB's opening brief, CBB respectfully requests that this Court enter an Order suspending or staying the enforcement of the March 28 Order and the September 14 Order thereby maintaining the status quo pending resolution of the appeals of both of the Orders.

Dated: April 16, 2002        Respectfully submitted,

_____
Kevin W. Goldstein
RATNER & PRESTIA
Suite 301, One Westlakes
Valley Forge, PA  19482
(610) 407-0700

Costas S. Krikelis
RATNER & PRESTIA
Suite 209, Webster Bldg
3411 Silverside Road
Wilmington, DE  19803
(302) 479-9470

Attorneys for Defendant
Counteract Balancing Beads

**CERTIFICATE OF SERVICE**

I hereby certify that two true and correct copies of the foregoing *Reply Brief Of Counteract Balancing Beads In Further Support Of Motion To Stay The Civil Contempt Order And Permanent Injunction Pending Appeal* were served upon the noted counsel of record by Federal Express, overnight delivery, on April 16, 2002.

    Allen C. Warshaw, Esquire
    Duane Morris & Heckscher LLP
    305 North Front Street, 5th Floor
    Harrisburg, PA 17108

*/s/ Kevin W. Goldstein*
Kevin W. Goldstein