



IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INTERNATIONAL MARKETING,  INC. : | | **FILED** |
| Professional Arts Building : | | HARRISBURG, PA |
| Suite C, P.O. Box B : | | NOV 1 8 2002 |
| Chambersburg, PA 17201 : | | MARY E. D'ANDREA, CLERK |
| Plaintiff, : | | Per _____ |
| : | | Deputy Clerk |
| v. : | | CIVIL ACTION |
| : | | No. 1:CV-00-0697 |
| : | | |
| : | | |
| COUNTERACT BALANCING : | | (Magistrate Judge Smyser) |
| BEADS, INC. : | | |
| 13029-8th Line : | | |
| RR # 1 : | | |
| Georgetown, Ontario L7G 4S4 : | | |
| Defendant. : | | |

**REPLY MEMORANDUM IN SUPPORT OF
APPLICATION FOR AWARD OF ATTORNEYS' FEES**

## I.     Introduction

In its Memorandum and Order of March 28. 2002, this Court held

Defendant Counteract Balancing Beads, Inc. ("Counteract") in contempt and

directed it to pay the Plaintiff's costs and attorneys' fees associated with its Motion for Contempt. On appeal, the Court of Appeals for the Third Circuit affirmed. Plaintiff has now applied for an Order directing Counteract to pay Plaintiff the attorneys' fees associated with its Motion for Contempt, including those incurred in contesting Counteract's Application for a Stay and appeal in the Third Circuit.

In response, Counteract has raised three defenses. First, Counteract claims that this Court lacks jurisdiction to award attorneys' fees for work performed on matters before the Third Circuit. Second, Counteract complains that IMI failed to submit sufficient support for some of its claimed attorneys fees. Finally, Counteract asserts that some of the work for which compensation is being sought was duplicative. These defenses will be addressed in order below. In addition, attached hereto is a detailed description of the work performed by Hahn Loeser & Parks.

## II.    This Court Has Jurisdiction Over Plaintiff's Application

Counteract argues that the Third Circuit's Local Appellate Rule 108.1 deprives this Court of jurisdiction to consider IMI's Application for Attorneys' Fees. That reads far too much importance into the rule.

The Eighth Circuit has held that a similar Eighth Circuit rule is procedural rather than jurisdictional and does not deprive the District Court of jurisdiction to award fees for appellate work.[1] Little Rock School District v. Arkansas, 127 F.3d 693, 696 (8th Cir. 1997).  According to the Eighth Circuit,

> Rule 47C cannot and does not affect the jurisdiction of the district courts. The jurisdiction of the federal district courts is conferred by Congress. See 28 U.S.C. §§ 1331-1390.  Rule 47C is a rule of procedure for the Court of Appeals and does not alter this grant of jurisdiction. Therefore, despite our local rule, the district courts retain jurisdiction to decide attorneys' fees issues that we have not ourselves undertaken to decide.

Id.

Apparently, the Third Circuit must view its rule the same way since it has recognized that, while "[o]rdinarily the petitions for appellate work are handled routinely in this court . . . . [t]he district court does have authority to set fees for counsel fees for counsel's work in both the district court and the appellate court." Brinker v. Guirida, 798 F.2d 661, 669 (3d Cir 1986).  See also Guido v.

_____

[1]The eighth Circuit's Local Rule 47C provides:

(a) **Motion for Fee**s. A motion for attorney fees, with proof of service, must be filed with the clerk within 14 days after the entry of judgment. The party against whom an award of fees is sought must file objections to an allowance of fees within ten days after service. The court may grant on its own motion an allowance of reasonable attorney fees to a prevailing party.

3

Schweiker, 775 F.2d 107, 110 (3d Cir. 1985)("We perceive no reason why the

district court should not set the fees for work in both courts when representation in

each was required."). Cf. Yaron v. Township of Northampton, 963 F.2d 33 (3d

Cir. 1992) ("a section 1988 application for attorney's fees arising out of an appeal

is a matter for the district court"); Liquid Glass Enterprises, Inc. v. Liquid Glass

Products International, Inc., 1993 U.S. Dist. Lexis 11475 (copy attached) aff'd

(without opinion), 961 F.2d 1567 (3d Cir. 1992).[2]

Here, as in the Eighth Circuit, the rule requiring the filing a fee petition in

the Court of Appeals is merely procedural, not jurisdictional. As the Eighth

Circuit noted, this Court's jurisdiction is conferred by Congress and cannot be

limited by the Court of Appeals. Thus, this Court retains the jurisdiction and

power to grant Plaintiff's fee request.

Defendant will suffer no prejudice if this Court exercises that power since

Defendant has stated no substantive objection to the appellate fee request.

Accordingly, this Court should exercise its power and award the requested fees.

---

[2]Admittedly Guido and Brinker were decided prior to the enactment of Rule
108.1. However, according to the comments accompanying the rule, L.A.R. 108.1
was merely a reissuance of a prior rule, Rule 27.1 which, according to the
comments, was identical in all substantive respects.

### III. Defendant Has Failed to Object to Plaintiff's Fee Request With Sufficient Specificity

The party opposing the fee award then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee. <u>Rode</u>, 892 F.2d at 1183. The District Court cannot decrease a fee award based on factors not raised at all by the adverse party. <u>Id</u>.

Here, Counteract raises only two objections: (1) the part of the fee request related to work performed by Hahn Loeser & Parks lacks sufficient detail; and (2) some of the time was duplicative, redundant and, as such, excessive. Thus, for example, this Court need not consider the reasonableness of the rate. Nor is there any challenge to the reasonableness of the hours spent on the appeal.

Moreover, Defendant's objections lack sufficient specificity. They do not say which of the entries lacks sufficient detail or why the detail is not sufficient. Nor do they identify which of the entries is claimed to be duplicative or redundant. Thus, Plaintiff is unable to reply to those objections and they should be denied.

**IV.    Plaintiff's Request for Fees is Adequately Documented and Does Not Include Fees for Work Which Was Redundant, Duplicative or Excessive**

Admittedly, inadequately documented hours should be excluded.  Hensley v. Eckerhart, 461 U.S. 424, 433, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983).   An attorney need not detail, however, the exact number of minutes spent on a matter, nor the specific activity to which each hour billed was devoted.  Keenan v. City of Philadelphia, 983 F.2d 459, 472-73 (3d Cir. 1992).  A fee petition is simply required to be specific enough to allow the court to determine if the hours claimed are reasonable for the work performed.  Pawlak v. Greenawalt, 713 F.2d 972, 978 (3d Cir. 1983), cert. denied, 464 U.S. 1042, 79 L. Ed. 2d 172, 104 S. Ct. 707 (1984).

In order to avoid any question about the sufficiency of its documentation, Plaintiff has submitted and attached to this Memorandum a detailed description of the work performed by Hahn Loeser & Parks.  That description, set forth in the original client bills, is complete and detailed and clearly meets the requirements for specificity.

That documentation also demonstrates that there was no redundancy in the work performed.  Rather, the attorneys at Hahn provided support to Duane Morris and later Klett Rooney throughout the contempt proceeding.  Early on, in

November of 2001, they helped to review Counteract's website to determine the extent of Counteract's contempt. Later, in December and January, they reviewed and made substantial comments and revisions in the Motion for Contempt and the supporting Brief. In February and March, they actually drafted parts of the response to Counteract's Brief and again commented on the rest of the reply brief. Finally, they continued to monitor Counteract's compliance and assisted in the drafting of the appellate brief. None of their work was duplicative.

Similarly, William Cramer, as general counsel for IMI, provided ongoing support and advice throughout the contempt process. As corporate counsel, he reviewed all documents on behalf of IMI to ensure that they accurately set forth the position of the company with regard to Counteract's contempt.

## V.    Conclusion

Plaintiff believes that it has adequately supported its request for fees in its entirety. However, Defendant should probably be given an opportunity to review the supplemental documentation and make specific objections. In addition, Plaintiff's request will be further supplemented to reflect time spent on the request for fees. Ultimately, a hearing may be required. Meanwhile, since there is no

challenge to the amount of the time spent by Duane Morris as of the filing of the fee petition, an interim award should be made in the amount of $40,398.18.

Respectfully submitted,

KLETT ROONEY LIEBER & SCHORLING
A Professional Corporation

BY: _____

Allen C. Warshaw, Esquire
240 North Third Street, Suite 600
Harrisburg, PA   17101-1503
(717) 231-7718
Counsel for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

INTERNATIONAL MARKETING, INC.          :
Professional Arts Building             :
Suite C, P.O. Box B                    :
Chambersburg, PA  17201                :
           Plaintiff,          :
                           :
        v.                       :    CIVIL ACTION
                           :    No. 1:CV-00-0697
                      :
                           :
                           :
COUNTERACT BALANCING                   :    (Magistrate Judge Smyser)
BEADS, INC.                            :
13029-8th Line                         :
RR # 1                                 :
Georgetown, Ontario L7G 4S4            :
           Defendant.          :

## AFFIDAVIT OF ATTORNEYS' FEES

I, MARK A. WATKINS, being duly sworn, depose and say:

    1.     I am a partner with Hahn Loeser & Parks LLP (hereinafter "HLP"), counsel for plaintiff International Marketing, Inc. ("IMI").

    2.     We have represented IMI on various intellectual property and litigation matters since approximately 1993.  We were requested by IMI to co-counsel with Duane Morris LLP on the post trial issues involved in the above captioned matter.  I have been the HLP attorney primarily responsible for representation of IMI in this matter.  I have done work or directed the work of others during the course of this litigation.  As such, I have personal knowledge of all matters testified to herein.

3.     In relation to its Motion to Contempt, IMI has incurred attorneys' fees for services by Hahn Loeser & Parks, LLP that total the amount of $19,212.50.

4.     A summary of the fees and costs incurred by IMI from HLP in relation to its Motion for Contempt, was attached to my Affidavit in support of Plaintiff IMI's application for award of attorney fees.  IMI's actual invoices identifying these fees and costs were not provided due to the privileged contents of the invoices.

5.     A summary of the fees and costs incurred from HLP in relation to the appeal of the Contempt Order and follow up on Counteract's compliance with the Contempt Order, is attached hereto as Exhibit 2.  IMI's actual invoices identifying these fees and costs were not provided due to the privileged contents of the invoices.

6.     Without waiver of any privilege, a true and accurate copy of the bills upon which the summary was based is now attached.  These bills, as annotated accurately set forth the time and expense spent by HLP in connection with IMI's Motion for Contempt appeal of the Contempt Order and follow up on Counteract's compliance with the Contempt Order.

7.     In a few instances, billing entries included work done on behalf of IMI related to the present Motion for Contempt, combined with another pending litigation involving the same defendant.  In these instances I have made a good faith attempt to properly apportion the time spent and the fees incurred for each matter.

Dated at Akron, Ohio, this ___*14th*___ day of November 2002.

_Mark A. Watkins_

Mark A. Watkins

State of Ohio      )
                       ) ss.
County of Summit    )

Sworn to before me and subscribed in my presence this __14th__ day of November, 2002.

_R. Eric Gaum_
Notary Public

R. ERIC GAUM
Attorney at Law
Notary Public - State of Ohio
My Commission has no expiration date
Section 147.04 R.C.

3 of 3

INTERNATIONAL MARKETING INC.
PROFESSIONAL ARTS BLDG., STE. C
P.O. BOX B
CHAMBERSBURG, PA 17201


Client No.   115838-21-LIT


Re: IMI v. Counteract Balancing Beads, Inc.

Date: 12/18/01
Invoice: 233529

| Date | Atty | Professional Services | Hours | Amount |
|------|------|----------------------|-------|--------|
| 11/19/01 | RJC | Review competitor website.  Print out changes made 11/19 and discuss with Mark Watkins.  Review judgement order to interpret the extent of changes required by the court.  Draft/Send e-mail to Allen Warshaw alerting him to same and copy client. | 2.10 | 441.00 |
| 11/19/01 | MAW | Review contract judgement in view of current website; Notify trial counsel & client; Discuss possible causes of action. | 1.20 | 318.00 |
| 11/20/01 | RJC | Review changes to website and record changes from 11/19 to 11/20.  Draft/send e-mail to A. Warshaw and copy client. Discuss same with Mark Watkins. | 0.80 | 168.00 |
| 11/27/01 | RJC | Review Counteract Website and confirm that changes to website are now complete.  Draft e-mail to Mark Watkins concerning Counteract's potential violation of the court order. | 0.50 | 105.00 |
| | | Total Hours and Fees | 4.60 | $1,032.00 |

| Legal Personnel | Hours | Rate | Amount |
|-----------------|-------|------|--------|
| Mark A. Watkins, Partner | 1.20 | 265.00 | 318.00 |
| Robert J. Clark, Associate | 3.40 | 210.00 | 714.00 |


** Continued on next page **

INTERNATIONAL MARKETING INC.
PROFESSIONAL ARTS BLDG., STE. C
P.O. BOX B
CHAMBERSBURG, PA 17201


Client No.  115838-21-LIT


Re: IMI v. Counteract Balancing Beads, Inc.

Date: 01/22/02
Invoice: 235467

| Date | Atty | Professional Services | Hours | Amount |
|------|------|----------------------|-------|--------|
| 12/04/01 | MAW | Discussions with Bill Cramer and Bob Sr. regarding Counteract's compliance with the Injunction from the Federal District Court regarding false advertising by Counteract; Research into possible legal action that IMI can initiate against Counteract. | 1.50 | 397.50 |
| 12/04/01 | RJC | Review items related to Counteract website and discuss same with Mark Watkins.  Teleconference with client related to strategy of response. Forward testimonials to client. | 1.50 | 315.00 |
| 12/05/01 | MAW | Discussion with Bill Cramer regarding Counteract False Advertising matter | 0.65 | 344.50 |
| | | discussion with colleagues about assuming greater role in case. | 0.30 | |
| 12/06/01 | MAW | Conference call with Bob Fogal and Bill Cramer regarding  Counteract matters. | | 159.00 |
| 12/07/01 | MAW | Discussions with Bob Fogal and Bill Cramer; initiate activities to assume primary responsibility for two (2) cases against Counteract. | 0.90 | 477.00 |
| 12/11/01 | MAW | Discussions with Bill Cramer, Bob Fogal and colleague regarding course of action against Counteract in False Advertising | 0.35 | 185.50 |


** Continued on next page **

INTERNATIONAL MARKETING INC.
01/22/02
Page 2

Client: 115838
Case: 21-LIT
Invoice: 235467

| Date | Atty | Professional Services | Hours | Amount |
|------|------|----------------------|-------|--------|
| | | and trade libel matters. | | |
| 12/17/01 | MAW | Discussion with Bill Cramer regarding Counteract Motion for Contempt. | 0.40 | 106.00 |
| 12/18/01 | ERA | Work in Progress: Review of proposed Motion for Contempt and Memorandum in Support of Motion for Contempt; revising memorandum of law regarding Counteract's violation of the preliminary injunction. | 1.50 | 285.00 |
| 12/18/01 | MAW | Review Duane Morris draft documents; discuss with associate and with Bill Cramer. | 1.70 | 450.50 |
| 12/18/01 | MAW | Attention to providing revisions and comments to Motion for Contempt against Counteract. | 0.70 | 185.50 |
| 12/19/01 | ERA | Work In Progress: revising memorandum of law in support of motion for contempt for violation of preliminary injunction. | 3.80 | 722.00 |
| 12/20/01 | ERA | Work in Progress: Revising Memorandum of law in support of motion for contempt for violation of preliminary injunction. | 1.30 | 247.00 |
| 12/20/01 | MAW | Work in progress in Memorandum in support of Motion for Contempt. | 1.20 | 318.00 |
| 12/21/01 | ERA | Revising Motion for Contempt for violation of preliminary injunction. | 0.50 | 95.00 |

Total Hours and Fees    18.50    $4,287.50

| Legal Personnel | Hours | Rate | Amount |
|-----------------|-------|------|--------|
| Mark A. Watkins, Partner | 9.90 | 265.00 | 2,623.50 |
| Eryn R. Ace, Associate | 7.10 | 190.00 | 1,349.00 |
| Robert J. Clark, Associate | 1.50 | 210.00 | 315.00 |

Total Current Fees    $4,287.50

Current Invoice Due    $4,287.50

** Continued on next page **

INTERNATIONAL MARKETING INC.
01/22/02
Page 3

Client: 115838
Case: 21-LIT
Invoice: 235467

Previous Due          $1,032.00
                      ----------------
Total Balance Due     $5,319.50
                      ================

INTERNATIONAL MARKETING INC.
PROFESSIONAL ARTS BLDG., STE. C
P.O. BOX B
CHAMBERSBURG, PA 17201


Client No.  115838-21-LIT


Re: IMI v. Counteract Balancing Beads, Inc.

Date: 02/21/02
Invoice: 237301

| Date | Atty | Professional Services | Hours | Amount |
|------|------|----------------------|-------|--------|
| 01/04/02 | MAW | Review and revise motion for contempt in Counteract matter; discussions with Bob Fogal Jr. regarding False advertising and trade libel actions; Review damage analysis by accountants; research potential to obtain punitive damages in trade libel action. | 2.40 | 636.00 |
| 01/04/02 | ERA | Discussion with MA Watkins regarding motion for contempt; work in progress: preparation of motion for contempt. | 0.40 | 76.00 |
| 01/07/02 | ERA | Work in Progress: Preparation of Motion for Contempt and memorandum in support. | 0.70 | 133.00 |
| 01/08/02 | ERA | Work in progress: preparation of motion for contempt and memorandum in support; forward same to Bill Cramer for review. | 1.60 | 304.00 |
| 01/11/02 | ERA | NO CHARGE - Discussion with MA Watkins regarding scope of motion for contempt; review of Counteract brochure forwarded by Bob Fogal; work in progress: revising | 0.50 | 0.00 |

** Continued on next page **

INTERNATIONAL MARKETING INC.
02/21/02
Page 2

Client: 115838
Case: 21-LIT
Invoice: 237301

| Date | Atty | Professional Services | Hours | Amount |
|------|------|----------------------|-------|--------|
| | | motion for contempt. | | |
| 01/14/02 | ERA | Work in Progress: preparation of memorandum in support of motion for contempt. | 1.50 | 285.00 |
| 01/15/02 | ERA | Work in Progress: preparation of final draft of motion for contempt and supporting memorandum; forward MA Watkins comments to Mr. Bill Cramer. | 0.50 | 95.00 |
| 01/16/02 | MAW | Final revisions to Motion for Comtempt and associated Memorandum to voice objection to Counteract's website and brochure. | 1.40 | 371.00 |
| 01/16/02 | RJC | Copy portions of the Counteract Website to diskette in support of new claim filed today.  Also transfer to diskette changes recorded on November 19, 2000 regarding same. | 0.40 | 84.00 |
| 01/18/02 | MAW | Review of Motion for Contempt materials; discussion with Bill Cramer regarding status. | 0.40 | 106.00 |

** Continued on next page **

INTERNATIONAL MARKETING INC.
02/21/02
Page 3

Client: 115838
Case: 21-LIT
Invoice: 237301

INTERNATIONAL MARKETING INC.
PROFESSIONAL ARTS BLDG., STE. C
P.O. BOX B
CHAMBERSBURG, PA 17201


Client No.  115838-21-LIT


Re: IMI v. Counteract Balancing Beads, Inc.                Date: 03/26/02
                                                           Invoice: 239991

| Date | Atty | Professional Services | Hours | Amount |
|------|------|----------------------|-------|--------|

INTERNATIONAL MARKETING INC.
03/26/02
Page 2

Client: 115838
Case: 21-LIT
Invoice: 239991

| 02/21/02 | RJC | Draft summary of Counteract response to IMI motion and forward to Mark Watkins. In support of summary, reviewed IMI motion, Counteract motion and supporting documents in file. | 2.40 | 504.00 |
|---|---|---|---|---|
| 02/21/02 | ERA | Review of Counteract's response to Motion for Contempt; discussion with MA Watkins and RJ Clark re same; preparation of reply brief. | 2.00 | 380.00 |
| 02/21/02 | MAW | Discussion with Bob Fogal regarding Counteract reply in contempt proceeding; provide additional information to Allen Warshaw | 1.30 | 344.50 |
| 02/22/02 | RJC | Review and revise response to Counteract reply brief, discuss same with Eryn Ace, review additional changes made by Eryn Ace. | 1.50 | 315.00 |
| 02/22/02 | ERA | Preparation of reply brief; forward revised reply brief and copy of Counteract brochure to Allen Warshaw. | 1.00 | 190.00 |
| 02/25/02 | RJC | Final review of changes made by Allen Warshaw.  Suggest additional corrections and forward to Allen for filing. | 0.80 | 168.00 |
| 02/28/02 | ERA | Review of Counteract web site; address issues in motion for contempt. | 1.80 | 342.00 |
| 02/28/02 | MAW | Attention to issues involving motion for | 1.10 | 291.50 |

** Continued on next page **

INTERNATIONAL MARKETING INC.
03/26/02
Page 3

Client: 115838
Case: 21-LIT
Invoice: 239991

| Date | Atty | Professional Services | Hours | Amount |
|------|------|----------------------|-------|--------|
|      |      | contempt; discuss with Bob Fogal Sr.; send communication to Allen Warshaw. |  |  |

INTERNATIONAL MARKETING, INC.
04/22/02
Page 2

Client: 115838
Case: 21-LIT
Invoice: 241313

| Date | Atty | Professional Services | Hours | Amount |
|------|------|----------------------|-------|--------|
| 03/07/02 | MAW | Provide assistance in preparation of exhibits and argument for Oral hearing on motion for contempt on Counteract false advertising matter. | 2.60 | 689.00 |
| 03/11/02 | ERA | E-mail to Allen Warshaw regarding contempt hearing. | 0.40 | 76.00 |
| 03/11/02 | MAW | Provide final assistance in preparation for hearing in Counteract false advertising matter. | 1.20 | 318.00 |
| 03/13/02 | ERA | Reviewing summary of oral argument in contempt hearing. | 0.20 | 38.00 |
| 03/13/02 | RJC | Review summary from Allen Warshaw of oral argument vs. Counteract. Review proposed order from Allen Warshaw and discuss same with Eyrn Ace. | 0.60 | 126.00 |
| 03/13/02 | MAW | Counteract False Advertising: attention to drafting of a proposed order for the court in the Contempt hearing from 3/12. | 1.40 | 371.00 |
| 03/14/02 | ERA | Revising order for entry of contempt. | 2.00 | 380.00 |
| 03/14/02 | MAW | Review proposed Order for court in Contempt action and propose revisions. | 0.80 | 212.00 |
| 03/19/02 | RJC | Review Counteract proposed court order | 0.10 | 21.00 |

** Continued on next page **

INTERNATIONAL MARKETING, INC.
04/22/02
Page 3

Client: 115838
Case: 21-LIT
Invoice: 241313

| Date | Atty | Professional Services | Hours | Amount |
|------|------|----------------------|-------|--------|
| | | and discuss same with Eryn Ace. | | |
| 03/21/02 | RJC | Search internet for counteract balancing references, review Wheel Weights International website and new presentations by counteract.  Review new changes to Counteract website.  Reporto findings to Mark Watkins and print record for file. | 1.40 | 294.00 |

INTERNATIONAL MARKETING, INC.
04/22/02
Page 4

Client: 115838
Case: 21-LIT
Invoice: 241313

| Atty | Professional Services | Hours | Amount |
|------|-----------------------|-------|--------|

INTERNATIONAL MARKETING, INC.                                   Client: 115838
04/22/02                                                          Case: 21-LIT
Page 5                                                        Invoice: 241313

| Date | Atty | Professional Services | Hours | Amount |
|------|------|----------------------|-------|--------|
| | | | | .00 |
| 03/29/02 | ERA | Review Court's opinion and order regarding motion for contempt; begin preparing evidence showing attorneys fees incurred in preparation of motion for contempt. | 0.80 | 152.00 |
| 03/29/02 | MAW | Review Court's order granting IMI's motioin for Contempt.  Review with client to see that it addresses client concners.  Discussion with co-counsel; initiate compilation of fees and costs. Review prior art and summaries of same. | 0.80 | 212.00 |

** Continued on next page **

INTERNATIONAL MARKETING, INC.
04/22/02
Page 6

Client: 115838
Case: 21-LIT
Invoice: 241313

| Date | Atty | Professional Services | Hours | Amount |
| --- | --- | --- | --- | --- |

** Continued on next page **

International Marketing, Inc.
07/15/02
Page 2

Client: 115838
Case: 21-LIT
Invoice: 246602

| Date | Atty | Professional Services | Hours | Amount |
|------|------|----------------------|-------|--------|
| 05/06/02 | SBH | Search for information on (1) Counteract Balancing Beads, (2) Wheel Weights International and (3) R. LaBlanc for RM Babbitt. | 0.30 | 30.00 |
| 05/07/02 | ERA | Preparation of affidavit of attorneys' fees. | 0.40 | 76.00 |
| 05/09/02 | WC | Researched enforcement of contempt orders/criminal contempt. | 0.70 | 66.50 |

** Continued on next page **

International Marketing, Inc.
07/15/02
Page 3

Client: 115838
Case: 21-LIT
Invoice: 246602

| Date | Atty | Professional Services | Hours | Amount |
|------|------|----------------------|-------|--------|
| 05/09/02 | ERA | Review of Counteract's web site for compliance with court's order; discussion with RJ Clark re same; continue preparation of affidavit of attorneys fees. | 0.70 | 133.00 |
| 05/09/02 | RJC | Review Counteract website pages to verify that Counteract is in contempt of Judge's contempt order. Review Wheel Weights website for same purpose. Send addresses to MA Watkins to have website recorded on disk by computer department. | 1.80 | 378.00 |
| 05/09/02 | MAW | Review of Counteract website; discovery of prohibited language still on website; contact in-house computer staff for preserving web site information as evidence. Discussion with client on how to proceed. | 1.50 | 397.50 |
| 05/10/02 | ERA | Preparation of Affidavit of Attorney's fees for contempt order. | 1.50 | 285.00 |

** Continued on next page **

International Marketing, Inc.
07/15/02
Page 4

Client: 115838
Case: 21-LIT
Invoice: 246602

| Date | Atty | Professional Services | Hours | Amount |
|------|------|----------------------|-------|--------|
| 05/10/02 | MAW | Review of Counteract website which continues to be in violation of Court Order and Contempt; begin draft of Show Cause motion; record web site findings as evidence for future use. | 1.30 | 344.50 |
| 05/13/02 | RJC | Review Counteract and Worldwide websites. Verify that Counteract has now shut down all but one webpage. Discuss same with MA Watkins. | 0.60 | 126.00 |
| | | | 3.00 | 465.00 |
| 05/14/02 | ERA | Revising affidavit of attorneys fees and summary of charges. | 0.40 | 76.00 |
| 05/14/02 | RJC | Review Counteract and Worldwide websites. Verify that Counteract has now shut down all but one webpage. Discuss same with MA Watkins. | 0.60 | 126.00 |
| | | | | 434.00 |
| | | | | 132.50 |
| 05/16/02 | ERA | Complete revision of affidavit of | 0.40 | 76.00 |

** Continued on next page **

International Marketing, Inc.
07/15/02
Page 5

Client: 115838
Case: 21-LIT
Invoice: 246602

| Date | Atty | Professional Services | Hours | Amount |
|------|------|----------------------|-------|--------|
| | | attorneys fees; prepare table summarizing invoices and fees. | | |
| 05/28/02 | RMB | Attention to CBB websites regarding contempt and review MSDS; phone call with MA Watkins regarding status and damages; | 1.50<br>1 hr | 232.50 |
| 05/30/02 | RMB | Police URL; attention to docket. | 0.30 | 46.50 |

** Continued on next page **

International Marketing, Inc.
07/22/02
Page 2

Client: 115838
Case: 21-LIT
Invoice: 247206

| Date | Atty | Professional Services | Hours | Amount |
|------|------|----------------------|-------|--------|
| 06/05/02 | ERA | injunction.<br>Work in progress: preparation of motion to show cause; discussion with CM Mitchell regarding research of internet web sites. | 1.70 | 323.00 |
| 06/11/02 | ERA | Preparation of motion to show cause for Counteract false advertising matter. | 1.50 | 285.00 |
| 06/12/02 | ERA | Preparation of motion to show cause for false advertising matter. | 1.80 | 342.00 |
| 06/12/02 | RJC | Review draft of motion to show cause from ER Ace. | 0.30 | 63.00 |
| 06/12/02 | MAW | Work in progress in drafting a motion for show cause regarding Counteract's continued violation of court order. Attention to completing affidavits and assembling evidence in support. | 1.20 | 318.00 |

** Continued on next page **

International Marketing, Inc.
07/22/02
Page 3

Client: 115838
Case: 21-LIT
Invoice: 247206

| Date | Atty | Professional Services | Hours | Amount |
|------|------|----------------------|-------|--------|
| 06/13/02 | ERA | Discussion with MA Watkins regarding motion to show cause; review of web-site; e-mail to CM Hanus regarding saving copies of available pages from Counteract's web site. | 0.50 | 95.00 |
| 06/20/02 | ERA | Preparation of motion to show cause for contempt; preparation of declaration of K. Preuss. | 2.40 | 456.00 |

** Continued on next page **

International Marketing, Inc.
07/22/02
Page 4

Client: 115838
Case: 21-LIT
Invoice: 247206

| Date | Atty | Professional Services | Hours | Amount |
|------|------|----------------------|-------|--------|
| 06/20/02 | MAW | Attention to Counteract Motion for Show Cause; finalize motion and discuss impact of this motion on settlement strategy in libel case. | 1.20 | 318.00 |
| 06/27/02 | MAW | call to A. Warshaw to coordinate appeal on Counteract I. Motion for Show Cause and settlement; | 2.60 | 689.00 |
| 06/28/02 | ERA | Review of appeal brief in Counteract false advertising case. | 1.00 | 190.00 |
| 07/01/02 | ERA | Revisions of Appeal Brief in false advertising case; e-mail to A. Warshaw | 0.50 | 95.00 |

** Continued on next page **

International Marketing, Inc.
07/22/02
Page 5

Client: 115838
Case: 21-LIT
Invoice: 247206

| Date | Atty | Professional Services | Hours | A |
|------|------|----------------------|-------|---|
| | | with comments. | | |

** Continued on next page **

178225

108V05

Print Request:   LEXSEE

Time of Request: November 18, 2002  11:34 AM EST

Number of Lines: 592
Job Number:       1841:0:71780065

Client ID/Project Name: i4777-001

Research Information:

Lexsee 1993 US DIST LEXIS 11475

Send to:  WARSHAW, ALLEN
          KLETT ROONEY LIEBER & SCHORLING
          240 N 3RD ST STE 600
          HARRISBURG, PENNSYLVANIA 17101-1503

LEXSEE 1993 US DIST LEXIS 11475

**LIQUID GLASS ENTERPRISES, INC., Plaintiff, v. LIQUID GLASS PRODUCTS INTERNATIONAL, INC. d/b/a LIQUID GLASS INTERNATIONAL; CLASSIC LIQUID GLASS, INC.; and GENE ELLIOTT, Defendants.**

**CIVIL ACTION NO. 89-6324**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

*1993 U.S. Dist. LEXIS 11475*

**August 16, 1993, Decided**

**August 17, 1993, Filed; August 18, 1993, Entered**

**DISPOSITION:**
[*1]  1) The motion of plaintiff for attorneys' fees and costs is GRANTED in the amount of $ 107,665.00 in fees and costs incurred in connection with the contempt proceedings before this Court and the proceedings before the court of appeals. 2) The motion of plaintiff for an order compelling compliance is DENIED.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff trademark holder filed a motion for attorneys' fees and costs incurred in obtaining and enforcing a civil contempt order against defendant trademark infringers.

**OVERVIEW:** A trademark holder prevailed in a trademark infringement action and subsequently pursued a civil contempt suit against the trademark infringers for failing to abide by the court's order. The trademark holder prevailed in the contempt action and sought the recovery of attorneys' fees and costs associated with the suit. The court granted the motion. The court held that exceptional circumstances existed to justify the award because the infringers used corporations that they controlled in their attempt to market and sell polish products bearing a trademark virtually identical to one that the court had previously enjoined them from using, in an attempt to evade the court's earlier injunction. The court also held that the fees sought by the trademark holder were reasonable because counsel rendered services at a special reduced rate and the infringers' objections were too general and conclusory to have merited consideration.

**OUTCOME:** The court awarded a trademark holder attorneys' fees and costs associated with the pursuit of a civil contempt proceeding initiated against trademark infringers in relation to an underlying trademark infringement action.

**CORE CONCEPTS**

*Trademark Law > Infringement > Damages*
Attorneys' fees and costs may be awarded to a successful party in a trademark infringement lawsuit, but only in the "exceptional case." *15 U.S.C.S. § 1117*(a). For a case to be "exceptional," it must be found that the losing party acted fraudulently or with bad faith or malice, or engaged in deliberate and willful infringement.

*Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount*
Reasonable attorneys' fees are comprised of the number of hours reasonably expended on a litigation multiplied by a reasonable hourly rate. Hours which have not been reasonably expended, that is, excessive, redundant, or otherwise unnecessary hours, or hours spent on unsuccessful claims, are to be excluded. Inadequately documented hours should also be excluded. An attorney need not detail, however, the exact number of minutes spent on a matter, nor the specific activity to which each hour billed was devoted. A fee petition is simply required to be specific enough to allow the court to determine if the hours claimed are reasonable for the work performed. The resulting figure, known as the lodestar, is more than a "rough guess" or initial

approximation of the attorneys' fees to be awarded. Rather, the lodestar is presumed to be the fee to which counsel is entitled.

*Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount*
Where a plaintiff obtains only limited success, a trial court should award only those fees, which are reasonable in relation to the results obtained. In a case, which presents several different causes of action, the trial court may not award fees for those claims on which the plaintiff did not prevail. The most critical factor in calculating an award of attorneys' fees is the degree of success obtained. Where a plaintiff achieves only partial success, a trial court may compare what was obtained to what type of relief was sought to determine a reasonable fee award. In deciding upon a reasonable hourly rate for an attorney, the trial court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation. The party seeking attorneys' fees bears the burden of proving that its request is reasonable with evidence submitted to support the hours worked and the rates claimed. The party opposing the fee award then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee. Once an adverse party raises objections, the trial court then has great discretion to adjust the fee award in response to the objections.

*Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount*
*Civil Procedure > Appeals > Frivolous Appeals*
Although a finding that an appeal was frivolous or made in bad faith is required before an award of costs and fees may be made under Fed. R. App. P. 38 or *28 U.S.C.S. § 1912,* this does not preclude an award of attorneys' fees and costs for work performed on appeal under separate authority.

*Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount*
*Civil Procedure > Appeals > Frivolous Appeals*
Where a judgment is affirmed by the United States Supreme Court or a court of appeals, the trial court in its discretion may adjudge to the prevailing party just damages for his delay, and single or double costs. *28 U.S.C.S. § 1912.*

**COUNSEL:**
For LIQUID GLASS ENTERPRISES, INC., PLAINTIFF: MARTIN J. D'URSO, KOHN, SAVETT, KLEIN & GRAF, P.C., PHILADELPHIA, PA. JAMES J. WALSH, DENNIS J. LEVASSEUR, BODMAN,

LONGLEY & DAHLING, DETROIT, MI. SHELDON H. PARKER, PARKER & DE STEFANO, CHARLOTTESVILLE, VA.

For LIQUID GLASS PRODUCTS INTERNATIONAL, INC. d/b/a LIQUID GLASS INTERNATIONAL d/b/a LIQUID GLASS PRODUCTS, INC. d/b/a CLASSIC LIQUID GLASS, INC., DEFENDANT: ARNOLD I. KALMAN, GERI ANN BENEDETTO, BLANK, ROME, COMISKY & MC CAULEY, PHILA, PA. RICHARD L. BAZELON, BAZELON & LESS, PHILA, PA. DOUGLAS W. SPRINKLE, CLIFFORD, GROH, BIRMINGHAM, MI. THOMAS W. HOLLAND, DENNIS F. NEE, TRAINUM, SNOWDON, HOLLAND, HYLAND AND DEANE, P.C., WASHINGTON, DC. For DEFENDANT: GENE ELLIOT, PRO SE, SOUTH PASADENA, FL. ARNOLD I. KALMAN, GERI ANN BENEDETTO, BLANK, ROME, COMISKY & MC CAULEY, PHILA, PA. RICHARD L. BAZELON, BAZELON & LESS, PHILA, PA. THOMAS [*2] W. HOLLAND, DENNIS F. NEE, TRAINUM, SNOWDON, HOLLAND, HYLAND AND DEANE, P.C., WASHINGTON, DC. For THE PEP BOYS-MANNY, MOE & JACK, DEFENDANT: RONALD J. SHAFFER, FOX, ROTHSCHILD, O'BRIEN & FRANKEL, PHILA, PA. HARVEY B. JACOBSEN, JR., MARSHA G. GETNER, FLEIT, JACOBSEN, COHN, PRICE, HOLMAN & STERN, WASHINGTON, DC.

For ADVANCE POLISH TECHNOLOGIES, NEVADA, ECR, JAPAN INC., GREGORY A. WIBLE, MOVANTS: JAMES W. PAUL, FULWIDER, PATTON LEE & UTECHT, LOS ANGELES, CA. STANLEY B. KITA, HOWSON AND HOWSON, SPRING HOUSE, PA.

**JUDGES:**
REED, JR.

**OPINIONBY:**
LOWELL A. REED, JR.

**OPINION:**

**FINDINGS OF FACT AND CONCLUSIONS OF LAW: MOTIONS OF PLAINTIFF FOR ATTORNEYS' FEES AND COSTS AND FOR AN ORDER TO COMPEL COMPLIANCE**

**I. INTRODUCTION**

These Findings of Fact and Conclusions of Law pertain to two (2) pending motions filed by plaintiff Liquid Glass Enterprises, Inc. ("LGE"): (1) plaintiff's motion,

including all supplements and amendments thereto, for attorneys' fees and costs incurred in obtaining and enforcing a civil contempt order against the defendants (Document Nos. 97 and 123), and (2) plaintiff's motion, as amended and supplemented, for an order to compel compliance (Document Nos. 109, 122, and 136). Both motions **[*3]** were authorized in my Findings of Fact and Conclusions of Law and Order dated October 7, 1991 (Document No. 84), finding the defendants in civil contempt of a permanent injunction I issued on September 24, 1990. The September 1990 injunction resolved trademark litigation between the parties initiated in 1989. I amended the October 7, 1991 Findings of Fact and Conclusions of Law and Order on November 22, 1991 to correct certain clerical errors I uncovered. See Amended Findings of Fact and Conclusions of Law and Amended Order dated November 22, 1991 (Document No. 105). My October 7 Findings of Fact and Conclusions of Law and Order were appealed by defendant Eugene Elliott ("Elliott") and non-party contempt respondent Gregory Wible ("Wible"). A motion by the appellants to stay my October 7 order was denied by the court of appeals on November 13, 1991. The court of appeals denied the appeal of this order on April 8, 1992.

Paragraph 2. h. of the October 7 and November 22, 1991 contempt orders directed the defendants to

pay all plaintiff's expenses incurred in prosecuting and enforcing this Order, including costs and attorneys' fees (to be proved by subsequent proceedings)[.]
 **[*4]**

And paragraph 3. of the contempt orders stated that

any violation of this Order may upon application of plaintiff result in any or all persons, firms or organizations found in violation being fined, caused to post financial and other security and incarcerated in jail to coerce compliance.

Upon consideration of the motions, the responses and replies of the parties thereto, n1 and on the basis of the Findings of Fact and Conclusions of Law detailed below, the motion of plaintiff for attorneys' fees and costs shall be granted, while the motion for an order to compel compliance will be denied.

n1 In my order dated May 14, 1992 (Document No. 131), I accepted a stipulation of the parties withdrawing a request for a hearing on the pending motions and stating that these motions may be decided by this Court solely on the papers they had submitted. This order also set

forth a timetable for the parties to submit a stipulation of uncontested facts, proposed findings of fact and conclusions of law, supporting legal memoranda, and proposed orders. The timetable contained in the May 14, 1992 order was twice extended to accommodate ongoing settlement discussions between the parties on the pending motions. See Orders dated August 17, 1992 (Document No. 143) and September 30, 1992 (Document No. 146).

**[*5]**

## II. FINDINGS OF FACT n2

n2 To the extent that findings of fact contain conclusions of law or constitute mixed findings of law and fact, they are intended to comply with the legal requirements of Fed. R. Civ. P. 52.

### A. The Parties

1. Plaintiff LGE is a New Jersey corporation with its principal place of business at 93F South Railroad Avenue, Bergenfield, New Jersey.

2. Defendants Liquid Glass Products International, Inc. ("LGPI") and Classic Liquid Glass, Inc. ("Classic") are corporations previously operated by defendant Elliott.

3. Non-party contempt respondent Advanced Polish Technologies, Inc., Nevada ("APT-NEV") is a Nevada corporation having a place of business at 516 South Fourth Street, Las Vegas, Nevada. APT-NEV was incorporated by non-party contempt respondent Wible on or about October 16, 1990. Non-party contempt respondent ECR Japan, Inc. ("ECR Japan") is a Japanese corporation having a place of business at 3-29-Sumi Yoshi-Cho, Maka-Ku, Yokohama-Shi 231, Japan.

### B. Plaintiff's   **[*6]**   Petition for Costs and Attorneys' Fees

4. On May 4, 1992, plaintiff LGE filed an Amended Petition for Costs and Attorneys' Fees ("Amended Petition") (Document No. 123). LGE's Amended Petition requests a total of $ 116,774.49 in attorneys' fees and costs in prosecuting and enforcing my Amended Order entered November 26, 1991 (Document No. 105). This sum supersedes the amount requested in LGE's initial fee petition.

5. Plaintiff LGE has agreed to a reduction of $ 9,110.00 in the requested fees and costs. See Stipulation

Regarding Petition for Attorneys Fees ("Fee Stipulation") (Document No. 141) at P 6. This agreement serves to reduce plaintiff's total demand from $ 116,774.49 to $ 107,665.00.

6. If plaintiff is legally entitled to recover fees and costs expended in preparation of its appellate brief in response to respondents' appeal to the court of appeals, plaintiff and respondents agree that $ 12,000.00 is a reasonable sum. See Fee Stipulation at P 7. Plaintiff and respondents also agree that if plaintiff is legally allowed to recover fees and costs spent in preparation of a response to respondents' application for a stay to the court of appeals, the sum of $ 9,500.00 [*7] is reasonable.

7. Respondents agree that for the results plaintiff LGE obtained in this case, namely procuring this Court's order finding respondents in contempt, $ 35,000.00 is a reasonable minimum amount of attorneys' fees for plaintiff. See Fee Stipulation at P 9. Respondents consider the total sum plaintiff seeks for its case before this Court, $ 86,165.00, to be unreasonable. Id. Plaintiff LGE and respondents agree, therefore, that the disputed amount of excess fees sought by plaintiff for its contempt litigation before this Court, that is, not including the sums listed above for the stay application and appeal, should not exceed $ 51,165.00 ($ 86,165.00 minus $ 35,000.00). Id.

8. To summarize, plaintiff is requesting attorneys' fees and costs in the following amounts:

```
 $ 12,000 -- for response to respondents' appeal
    9,500 -- for response to respondents' stay application
   86,165 -- for prosecution of the contempt before the district court
 =====================
 $ 107,665 -- total fees and costs requested
```

9. Counsel for plaintiff have filed various documents in support of their fee application. These documents include affidavits and timesheets. See October [*8] 30, 1991 and February 18, 1992 affidavits of Sheldon H. Parker, Esq. ("Parker") of Parker & De Stefano, Exhibit B to the initial and amended petition for attorneys' fees and costs (Document Nos. 97 and 123, respectively); November 1, 1991 and May 1, 1991 affidavits of Martin J. D'Urso, Esq. ("D'Urso") of Kohn, Nast & Graf, P.C., Exhibit D to initial fee petition and Exhibits D and F to amended fee petition; timesheets of Parker & De Stefano and Kohn, Nast & Graf, P.C., Exhibits C and E to initial fee petition and Exhibits C, E, and G to amended fee petition.

10. In their affidavits, counsel for plaintiff LGE list the attorneys and staff at their respective law firms who worked on this case, and describe their credentials and experience, their hourly rates, and the computerized billing system at their firms. Parker & De Stefano specializes in patent, trademark and copyright law. Parker has been practicing patent and trademark law for approximately 30 years. He is admitted to practice law in Virginia, New Jersey, the federal courts, the United States Patent and Trademark Office, and the Canadian Patent Office. He was former Director of Patents for M&T Chemicals, an international subsidiary [*9] of Elf Aquitaine. Parker engages in trademark litigation in federal court in Michigan, Pennsylvania, Florida, Virginia and Ohio. Parker's normal billing rate is $ 175.00 per hour. Pursuant to an agreement between LGE and Parker, the services Parker rendered in connection with the contempt proceedings in the instant case were billed at the reduced rate of $ 125 per hour. See Memorandum in Support of Plaintiff's Petition for Attorneys' Fees (Document No. 135) at p. 4.

11. Two attorneys from Kohn, Klein, Nast & Graf, P.C. ("Kohn, Klein") worked on the contempt proceedings in this case: D'Urso and H. Geoffrey Moulton, Jr., Esq. ("Moulton"). D'Urso received a B.A. from Rutgers University in 1976 and a J.D. magna cum laude from the Dickinson School of Law in 1984. Prior to joining Kohn, Klein in 1989, D'Urso served as a law clerk to the Honorable Mitchell H. Cohen, United States District Judge, District of New Jersey, and was associated with the law firm of Berger & Montague. Moulton received a B.A. from Amherst in 1980 and a J.D. from the Columbia University School of Law in 1984. Prior to joining Kohn, Klein in 1990, he served as a law clerk to the Honorable Wilfred Feinberg, [*10] United States Court of Appeals for the Second Circuit, and to the Honorable William H. Rehnquist, United States Supreme Court, and as an Assistant U.S. Attorney in Philadelphia.

12. The hourly rate charged by D'Urso and Moulton with regard to the contempt proceedings in this case was $ 160. The hourly rates of the Kohn, Klein firm have

been approved in a number of decisions in which court approval was necessary for an award of costs and fees. See, e.g., Gross, et al. v. Hertz Corp., Master File No. 88-0661 (E.D. Pa. 1989); *In Re Chlorine Antitrust Litigation, Master File No. 86-5428, 1988 U.S. Dist. LEXIS 10628 (E.D. Pa. 1988);* In Re Beech-Nut Apple Juice Litigation, Master File No. 86-6608 (E.D. Pa. 1987).

13. Respondents have raised objections to specific timesheet entries of counsel for plaintiff. With regard to Parker & De Stefano's timesheets, respondents' objections include excessive and unnecessary expenditures, excessive hours per day billed, and an unreasonable accumulation of hours billed for specific tasks given Parker's level of experience. See Remaining Respondents' Objections to Parker & De Stefano Timesheets, Exhibit 1 to the Fee Stipulation (Document No. 141). Respondents' objections [*11] to the billing entries of Kohn, Klein include insufficient billing summaries to support fees requested. See Remaining Respondents' Objections to Timesheets of Kohn, Klein, Exhibit 1 to the Fee Stipulation.

### C. Plaintiff's Application for Compliance

14. Plaintiff LGE has refined its application for an order compelling compliance to focus solely on paragraphs 2. h. and 2. j. of my order finding defendant Elliott and respondents in contempt of my September 1990 injunction. In other words, plaintiff now seeks only an order requiring defendant Elliott and respondents to pay the expenses and attorneys' fees it incurred in prosecuting and enforcing my contempt order, and to pay to plaintiff the profits from illegal sales of products using the Advanced Liquid Glass ("ALG") or Advanced Liquid 1st Class ("AL1C") trademark since the issuance of my injunction. See Supplemental Brief of Plaintiff LGE in Support of Its Supplemental Proposed Findings of Fact and Conclusions of Law and Order ("Supplemental Brief") (Document No. 147) at pp. 9-11; see also Proposed Order at p. 2 (Document No. 147) (compliance sought only with paragraphs 2. h. and 2. j.).

15. In paragraphs 2. a., [*12] 2. d., 2. f. and 2. g. of my contempt order, I directed defendant Elliott and the respondents to account for all sales of AL1C and ALG, to account for all product bearing the trademark of these products, and to allow an independent audit of their books. See Amended Order (Document No. 105). In my order dated August 17, 1992 (Document No. 143), I granted a motion by plaintiff to expedite consideration of its application for an order to compel compliance. In furtherance of this order, I directed respondent Wible to allow plaintiff LGE to conduct an audit at LGE's expense by producing for plaintiff

each and every document in his possession or control which identifies sales, including sales volume, gross revenue of all sales, costs, and all net profits, resulting from sales under the trademark ADVANCED LIQUID 1st CLASS or ADVANCED LIQUID GLASS since the entry of the Court's September 1990 injunction, or, to provide full documentary and support explanation for items reported in the following tax returns:

1) the 1989, 1990, and 1991 corporate tax returns for APT and ECR, and

2) the 1989, 1990, and 1991 individual tax returns for Wible.

Order dated August 17, 1992 (Document No. [*13] 143).

16. In response to the foregoing decrees, respondents have produced the following material:

a. APT Invoice Log depicting Sales Volume

b. 1990-91 Income Statement listing expenses

c. Accounts Payable and Accounts Receivable Reports

d. Balance Sheets for APT and ECR dated 12/31/91

e. Federal Tax Returns for APT from 1991

f. Federal Tax Returns for ECR from 1989, 1990, 1991

g. Greg Wible's Tax Returns for 1989, 1990, 1991

h. Invoices from Tekonsha Corp.

i. Sales Invoices of AL1C from APT and ECR

j. Bank Statements from APT and ECR

k. Documentation for Audit pursuant to 8/17/92 Order

See Exhibits A through D to Respondents' Memorandum in Support of Proposed Findings of Fact and Conclusions of Law (Document No. 134); Exhibit F to Plaintiff LGE's Application for an Order Compelling Compliance (Document No. 109); Exhibits 1 through 6 to LGE's Application for an Order Compelling Compliance (Document No. 136); Exhibits 1 through 11 to LGE's Supplemental Findings of Fact and Conclusions of Law (Document No. 147).

17. Under cover of a letter dated August 26, 1992, Wible provided additional documents identifying sales, revenue, costs and expenses resulting [*14] from sales

1993 U.S. Dist. LEXIS 11475, *

of enjoined product. See Exhibit B to November 9, 1992 Declaration of Wible, Submitted in Support of Respondents' Supplemental Proposed Findings of Fact and Conclusions of Law (Document No. 150). In his August 26 letter, Wible offered to answer questions of plaintiff which arose from plaintiff's review of the audit documents he had supplied. Id. Plaintiff LGE never asked for any input or explanation as to gaps or ambiguities it perceived in the documents provided by Wible. n3

n3 In a September 11, 1992 facsimile transmission from plaintiff LGE to Wible, plaintiff did ask for certain checking and savings bank statements, including statements covering the personal accounts of Wible and his wife. See November 9, 1992 Wible Declaration, Exhibit C. There is no evidence in the record now before me, however, that plaintiff has sought simply to telephone or write Wible or his counsel in order to enlist his help with the audit by having him attempt to clarify gaps or ambiguities in the material he provided.

[*15]

## III. CONCLUSIONS OF LAW n4

n4 To the extent that conclusions of law contain findings of fact or constitute mixed findings of law and fact, they are intended to comply with the legal requirements of Fed. R. Civ. P. 52.

Based upon the foregoing Findings of Fact, I make the following Conclusions of Law:

### A. Plaintiff's Petition for Costs and Attorneys' Fees

1. Attorneys' fees and costs may be awarded to a successful party in a trademark infringement lawsuit, but only in the "exceptional case." 15 U.S.C. § 1117(a); Ferrero U.S.A., Inc. v. Ozak Trading, Inc., 952 F.2d 44, 47 (3d Cir. 1991). For a case to be "exceptional," it must be found that the losing party acted fraudulently or with bad faith or malice, or engaged in deliberate and willful infringement. Id. My prior findings of fact and conclusions of law make it clear that defendant Elliott and respondent Wible engaged in such conduct in infringing upon the trademark of plaintiff [*16] LGE. Specifically, Elliott and Wible used corporations they

controlled to try and market and sell polish products bearing a trademark virtually identical to one I had enjoined them from using in an attempt at evading my September 1990 injunction. See generally Amended Findings of Fact and Conclusions of Law and Amended Order dated November 22, 1991 (Document No. 105). Accordingly, I reaffirm my decision to award attorneys' fees and costs in this case.

2. Reasonable attorneys' fees are comprised of the number of hours reasonably expended on a litigation multiplied by a reasonable hourly rate. Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 564-65, 92 L. Ed. 2d 439, 106 S. Ct. 3088 (1986); Hensley v. Eckerhart, 461 U.S. 424, 433, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983). Hours which have not been reasonably expended, that is, excessive, redundant, or otherwise unnecessary hours, or hours spent on unsuccessful claims, are to be excluded. Hensley, 461 U.S. at 434; Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990). Inadequately documented hours should also be excluded. Hensley, 461 U.S. at 433. [*17] An attorney need not detail, however, the exact number of minutes spent on a matter, nor the specific activity to which each hour billed was devoted. Keenan v. City of Philadelphia, 983 F.2d 459, 472-73 (3d Cir. 1992). A fee petition is simply required to be specific enough to allow the court to determine if the hours claimed are reasonable for the work performed. Pawlak v. Greenawalt, 713 F.2d 972, 978 (3d Cir. 1983), cert. denied, 464 U.S. 1042, 79 L. Ed. 2d 172, 104 S. Ct. 707 (1984). See also West Virginia University Hosp., Inc. v. Casey, 898 F.2d 357, 367 (3d Cir. 1990) ("Although we do not require absolute precision in a fee reimbursement petition, we do require 'some fairly definite information as to the hours devoted to various general activities.'") (quoting Pawlak v. Greenawalt, 713 F.2d 972, 978 (3d Cir. 1983), cert. denied, 464 U.S. 1042, 79 L. Ed. 2d 172, 104 S. Ct. 707 (1984)).

3. The resulting figure, known as the lodestar, is more than a "rough guess" or initial approximation of the attorneys' fees to be awarded. Rather, the lodestar is presumed to [*18] be the fee to which counsel is entitled. Delaware Valley, 478 U.S. at 564; Blum v. Stenson, 465 U.S. 886, 897, 79 L. Ed. 2d 891, 104 S. Ct. 1541 (1984).

4. Where a plaintiff obtains only limited success, a court should award only those fees which are reasonable in relation to the results obtained. Hensley, 461 U.S. at 435. In a case which presents several different causes of action, the court may not award fees for those claims on which the plaintiff did not prevail. Id. at 435-36; see also Rode, 892 F.2d at 1185. In Farrar v. Hobby, 121 L. Ed. 2d 494, 113 S. Ct. 566 (1992), the Supreme Court emphasized that the "most critical factor" in calculating

an award of attorneys' fees is the degree of success obtained. *Id. at 574.* Where a plaintiff achieves only partial success, a court may compare what was obtained to what type of relief was sought to determine a reasonable fee award. *Id. at 574-75.*

5. In deciding upon a reasonable hourly rate for an attorney, the court should be guided by the [*19] rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation. *Blum v. Stenson, 465 U.S. 886, 895 n.11, 79 L. Ed. 2d 891, 104 S. Ct. 1541 (1984); Rode, 892 F.2d at 1183.*

6. The party seeking attorneys' fees bears the burden of proving that its request is reasonable with evidence submitted to support the hours worked and the rates claimed. *Hensley, 461 U.S. at 433.* "The party opposing the fee award then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee." *Rode, 892 F.2d at 1183.* Once an adverse party raises objections, the court then has great discretion to adjust the fee award in response to the objections. Id.; see also *Bell v. United Princeton Properties, Inc., 884 F.2d 713, 721 (3d Cir. 1989).*

7. The hourly rate charged by Parker for the services he rendered in connection with the contempt proceedings was $ 125. See Finding of Fact P 10. This was a special reduced rate he agreed to with plaintiff [*20] LGE. Id. His normal billing rate is $ 175 per hour. Id. The hourly rate charged by D'Urso and Moulton of the Kohn, Klein firm for work performed on the contempt proceedings was $ 160. See Finding of Fact P 12. I find that these hourly rates are reasonable. Stated another way, I find that these rates fall within the purview of the prevailing rates charged in this community for similar work performed by attorneys of comparable skill, experience, and reputation. See *Blum, 465 U.S. at 895 n.11; Rode, 892 F.2d at 1183.*

8. As noted in Findings of Fact PP 5 through 7, my task in arriving at a reasonable figure for costs and attorneys' fees has been significantly facilitated through various stipulations of the parties. With regard to the contempt proceedings before this Court, the parties agree that $ 35,000 is a reasonable minimum amount of attorneys' fees and costs for plaintiff. See Fee Stipulation at P 9. Respondents consider the total sum plaintiff seeks for its case before this Court, $ 86,165.00, to be unreasonable. Id. Plaintiff LGE and respondents agree, therefore, that the amount of fees and costs in [*21] dispute for the contempt proceedings at the current level is $ 51,165.00 ($ 86,165.00 minus $ 35,000.00). Id.

9. Respondents attempt to reduce the disputed $ 51,165.00 amount through objections to specific timesheet entries of counsel for plaintiff. See Remaining Respondents' Objections to Timesheets of Parker & De Stefano and Kohn, Klein, Exhibit 1 to Fee Stipulation (Document No. 141). I have carefully reviewed each objection raised by respondents against the corresponding timesheet entries of plaintiff's counsel. See Timesheets of Parker & De Stefano and Kohn, Klein, Exhibits C and E to plaintiff's initial fee petition (Document No. 97) and Exhibits C, E, and G to plaintiff's amended fee petition (Document No. 123).

10. The objections are too numerous and repetitive to discuss seriatim. I have determined that none of the remaining objections warrant a reduction of the disputed $ 51,165.00 component of plaintiff's request for costs and fees. Many of these objections are too general and conclusory for the Court to consider. Given plaintiff's comprehensive success in this case, and the low hourly rate negotiated for Parker's services, I conclude that Parker & De [*22] Stefano's and Kohn, Klein's request for $ 86,165 in costs and fees to cover the contempt proceedings before this Court is reasonable, and I shall award this sum.

11. I will also award plaintiff the sums it seeks in connection with the stay application and appeal pursued by the respondents. As noted in Finding of Fact P 6, plaintiff requests $ 12,000 to cover costs and fees allegedly incurred in preparing an appellate brief in response to respondents' appeal to the court of appeals, and $ 9,500 for costs and fees associated with the preparation of a response to respondents' application for a stay to the court of appeals. I cannot agree with respondents that such monies may not be awarded in the absence of a finding by the court of appeals that respondents' appellate efforts were frivolous or made in bad faith. Although a finding that an appeal was frivolous or made in bad faith is required before an award of costs and fees may be made under Fed. R. App. P. 38 n5 or *28 U.S.C. § 1912,* n6 this does not preclude an award of attorneys' fees and costs for work performed on appeal under separate authority, such as the statutory standard I have [*23] relied upon here. See *Perkins v. Standard Oil Co., 399 U.S. 222, 223, 26 L. Ed. 2d 534, 90 S. Ct. 1989 (1970)* (Section 4 of Clayton Act authorizes district court to award counsel fees for legal services performed at the appellate stages of successfully prosecuted private antitrust action); *Brown v. Freedman Baking Co., Inc., 810 F.2d 6, 12 (1st Cir. 1987)* (although appellee not entitled to fees for appellate efforts under frivolous standard of Fed. R. App. P. 38, such fees recoverable under *42 U.S.C. § 1988); Brinker v. Guiffrida, 798 F.2d 661, 669 (3d Cir. 1986)* (district court authorized to set EAJA fees for counsel's work in both the district court and the appellate court); *Suzuki v. Yuen, 678 F.2d 761, 762 (9th Cir. 1982)* (civil rights

case; "Generally, the district court grants appellate attorneys' fees after hearing evidence as to the worth of the services.") (citations omitted). Consequently, I shall grant plaintiff LGE the $ 21,500 it has requested for the appellate work performed by its counsel in response to the appeal and stay application of the [*24] respondents. As mentioned in Finding of Fact P 6, the parties have stipulated that this sum is a reasonable amount if I determine, as I have, that the appellate fees and costs are legally recoverable.

> n5 Appellate Rule 38 states that "if a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee." Fed. R. App. P. 38.

> n6 This provision states:

> Where a judgment is affirmed by the Supreme Court or a court of appeals, the court in its discretion may adjudge to the prevailing party just damages for his delay, and single or double costs.

> *28 U.S.C. § 1912.*

12. Apart from the authority just discussed, I also find that the monies plaintiff incurred in responding to respondents' efforts on appeal fall within paragraph 2. h. of my contempt order as "expenses incurred in prosecuting and enforcing" that order. See Paragraph 2. h. of the Orders dated October 7 and November 22, 1991 (Document Nos. 84 and [*25] 105, respectively). I clearly intended paragraph 2. h. to encompass plaintiff's successful defense of my order on appeal.

**B. Plaintiff's Application for Compliance**

13. In its application for compliance, plaintiff LGE seeks enforcement of paragraph 2. j. of my contempt order, requiring respondents to

pay to plaintiff an amount equal to respondents' net dollar profits from the sale of all products using the ADVANCED LIQUID GLASS or ADVANCED LIQUID 1st CLASS mark since this Court's September 26, 1990 Order[.]

See Paragraph 2. j. of Contempt Orders dated October 7 and November 22, 1991 (Document Nos. 84 and 105, respectively) (emphasis supplied).

14. Plaintiff argues that due to its inability to determine accurately the net profits respondents earned from sales of enjoined product, the Court should award plaintiff the gross sale or revenue figure reflected in invoices provided by respondent Wible, the only deduction being the cost of product respondents purchased. Plaintiff contends that its request for this special "adjusted net" profit figure, as opposed to the "net dollar profits" sum specified in paragraph 2. j. of my contempt order, is justified by the many [*26] discrepancies and gaps in the audit documents respondent Wible has produced. These discrepancies and gaps, plaintiff argues, reinforce its belief that respondents are simply manipulating and hiding sales and funds. See Plaintiff's Supplemental Brief (Document No. 147).

15. Respondent Wible contends that he has complied to the best of his ability with this Court's directive to produce all documents reflecting sales, revenue, and profits from AL1C and ALG. He claims he gave plaintiff every relevant document in his possession and that the bottom line is that respondents simply did not realize a net profit on any sales of ALG or AL1C. This conclusion should be clear, Wible argues, from the voluminous financial documents provided plaintiff. In a sworn declaration, Wible details alleged erroneous assumptions used by plaintiff in its calculation of respondents' profits from sales of AL1C and ALG, such as an inaccurate per-case retail sales price. He also details the well-documented minimum expenses which plaintiff purportedly should have taken into account in determining net profits from the sale of any enjoined polish products. When such expenses are considered, asserts Wible, it becomes [*27] clear that respondents' polish businesses operated at a loss during the period prior to this Court's injunction. See Memorandum in Support of Respondents' Supplemental Findings of Fact and Conclusions of Law (Document No. 150) at pp. 1-9 ("Respondents' Supplemental Memo."); November 9, 1992 Declaration of Wible submitted in support of Respondents' Supplemental Findings of Fact and Conclusions of Law.

16. As discussed in Findings of Fact PP 16 and 17, Wible has produced numerous financial documents to plaintiff in response to the orders of this Court. He also has offered to answer any questions plaintiff might have arising from its review of the audit documents. See Finding of Fact P 17.

17. At least with regard to the required production of financial accounting documents, I find Wible's attitude to have been one of complete cooperation. As I mentioned above, despite Wible's offer, not once does it appear that a representative of plaintiff LGE sought Wible's input or explanation regarding the documentation he provided. For this reason alone, plaintiff LGE cannot be heard to

1993 U.S. Dist. LEXIS 11475, *

complain that it is unable to assemble an accurate net profit figure for respondents and that this Court [*28] should award it a special "adjusted net" profit figure based on gross revenues minus cost of goods sold.

18. Based upon the financial documents produced by respondents and the explanations provided in Wible's November 9, 1992 declaration and Respondents' Supplemental Memo., I am inclined to agree with respondents' statement that with regard to any net dollar profits from sales of enjoined product, plaintiff is simply attempting to "wring further blood from ... [an] exhausted turnip." See Respondents' Supplemental Memo. at p. 3. Accordingly, plaintiff's motion for an order to compel compliance with paragraph 2. j. of my contempt order shall be denied. n7

n7 Both plaintiff and respondents have proposed a transfer of various assets from respondents to plaintiff as part of a final resolution of this matter. See Plaintiff's proposed order (Document No. 147); Respondents' proposed order (Document No. 150). Respondents value the proposed asset transfer at approximately $ 75,000 and offer it in satisfaction of any compensation due plaintiff. See Respondents' Supplemental Memo. at pp. 10-11 (Document No. 150). Plaintiff LGE disputes the value of the items which comprise the proposed asset transfer and states that the only conceivable need it has for these assets is to prevent misuse by respondents or a third party. See Plaintiff's Response to Respondents' Supplemental Memo. (Document No. 151) at pp. 9-10. I decline to order the transfer of any of the assets proposed, because I foresee significant problems in accurately valuing any of the assets and there is no evidence that respondents have continued to misuse these assets in violation of my injunction. Defendant Elliott and respondents are aware of the injunction and contempt orders I have issued in this case and are expected to conduct any future business endeavors they find themselves engaged in within the confines of these decrees.

[*29]

An appropriate order follows.

## ORDER AND JUDGMENT

**AND NOW**, this 16th day of August 1993, upon consideration of plaintiff Liquid Glass Enterprises, Inc.'s ("LGE") motion, including all supplements and amendments thereto, for attorneys' fees and costs incurred in obtaining and enforcing this Court's civil contempt order against the defendants (Document Nos. 97 and 123), and plaintiff LGE's motion, as amended and supplemented, for an order to compel compliance (Document Nos. 109, 122, and 136), the responses and replies of the parties thereto, and for the reasons set forth in the accompanying Findings of Fact and Conclusions of Law, it is hereby **ORDERED** as follows:

1) The motion of plaintiff for attorneys' fees and costs is **GRANTED** in the amount of $ 107,665.00 in fees and costs incurred in connection with the contempt proceedings before this Court and the proceedings before the court of appeals.

2) The motion of plaintiff for an order compelling compliance is **DENIED**.

**JUDGMENT IS HEREBY ENTERED** in the amount of $ 107,665.00 in favor of plaintiff Liquid Glass Enterprises, Inc. and jointly and severally against defendants Liquid Glass Products International, [*30] Inc. d/b/a Liquid Glass International; Classic Liquid Glass, Inc.; and Eugene Elliott, and non-party contempt respondents Advanced Polish Technologies, Inc., Nevada; ECR Japan, Inc.; and Gregory A. Wible.

**LOWELL A. REED, JR., J.**

108V05

********** Print Completed **********

Time of Request:    November 18, 2002   11:34 AM EST

Print Number:       1841:0:71780065
Number of Lines:    592
Number of Pages:

Send To:   WARSHAW, ALLEN
           KLETT ROONEY LIEBER & SCHORLING
           240 N 3RD ST STE 600
           HARRISBURG, PENNSYLVANIA 17101-1503

# CERTIFICATE OF SERVICE

On the 18th day of November, 2002, I, Glenda K. Davidson, secretary in the law offices of Klett Rooney Lieber & Schorling, hereby certify that I have served a true and correct copy of the foregoing Reply Memorandum in Support of Application for Award of Attorneys' Fees in the above-captioned matter, via first class mail, to those persons indicated below:

Counteract Balancing Beads, Inc.
c/o Kevin W. Goldstein, Esquire
Ratner & Prestia
Suite 209, Webster
3411 Silverside Road
P.O. Box 7228
Wilmington, DE 19803

_Glenda K. Davidson_
Glenda K. Davidson

KRLSHAR:21757.1