CC: MJ Smyser; M. D'Andrea, Attys Warshaw, W. Cramer, K. Cramer, K. Goldstein & C. Krikilis



UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

INTERNATIONAL MARKETING, INC.,    :    CIVIL NO. 1:CV-00-0697
:
    Plaintiff    :    (Magistrate Judge Smyser)
:
v.    :
:    **FILED**
:    HARRISBURG, PA
COUNTERACT BALANCING    :
BEADS, INC.,    :    JAN 0 2 2003
:
    Defendant    :    MARY E. D'ANDREA, CLERK
        Per _____
            Deputy Clerk

<u>**MEMORANDUM AND ORDER**</u>

    This case was initiated by a complaint filed on April 17, 2000. On February 21, 2001, the parties consented to proceed before a magistrate judge. The case was reassigned to the undersigned. A non-jury trial of the plaintiff's claim for injunctive relief was held on August 6 to August 9, 2001. By an Order of September 14, 2001, the court directed the entry of judgment in favor of the plaintiff and against the defendant.

    The September 14, 2001 Order provides that Counteract Balancing Beads, Inc. (CBB) is "enjoined from making any statements to the public, its customers and potential customers in which it states or otherwise leads people to believe that Counteract Balancing Beads cling to the inside of a tire in a balancing position as a result of electrostatic cling." In the

court's memorandum opinion, the court found the advertising by CBB that its beads develop an electrostatic cling during tire rotation and that upon the cessation of rotation the beads remain in a static balanced position to be false advertising in violation of the Lanham Act.

The plaintiff filed a motion for attorney fees on October 15, 2001. That motion was denied by Order of November 29, 2001.

On January 23, 2002, the plaintiff filed a motion for contempt, along with a brief and exhibits in support. A brief and exhibits in opposition were filed by the defendant on February 15, 2002. A reply brief in support of the motion was filed on March 1, 2002.

A hearing on the motion for contempt was held on March 12, 2002. The plaintiff sought an order holding the defendant in contempt, directing the payment of a daily $1,000 fine until the defendant were to comply with the Order of September 14, 2001, and ordering the defendant to pay the plaintiff's costs of the motion and attorneys' fees associated with the motion.

The Court found after a hearing that the substitution by the defendant in its advertisements of the phrase "kinetic cling" for "electrostatic cling" led the public, customers and potential customers to believe that the beads sold by the defendant cling to the inner lining of tires as a result of electrostatic forces. *Order of March 28, 2002.* The court concluded that references to "kinetic clinging" in the defendant's advertisements led the public and customers and potential customers to believe that the beads cling to the inside of a tire in a balancing position as a result of electrostatic cling and that references in the defendant's brochures, internet advertisements and other advertising media were in violation of the September 14, 2001 Order. The court also found that references to CBB's Patent in combination with the reference to the beads clinging was in violation of the September 14, 2001 Order. The court found there not to be a basis for a finding of good faith on the part of CBB in the advertising that was the subject of the contempt motion, and found the substitution of "kinetic" for "electrostatic" to have been done in bad faith. We found CBB to be in disobedience of the Order of September 14, 2002 and we granted the motion of the plaintiff for an adjudication of contempt. It was held that the defendant was in contempt of the Order of

September 14, 2001. The defendant was directed to take remedial steps and to pay a coercive sanction of $1,000 per day to the court until there was compliance with the Order of September 14, 2001. The payments were to commence on May 8, 2002.

The defendant was directed to pay the plaintiff's costs and attorneys' fees associated with the motion. The plaintiff was ordered to file affidavits evidencing the amount of costs and attorney fees.

The defendant appealed the Order of March 28, 2002 to the Court of Appeals. By Opinion and Order of September 11, 2002, the Court of Appeals affirmed the Orders of September 18, 2002 and of March 28, 2002, and taxed costs against the appellant.

On October 17, 2002, the plaintiff filed in this court a motion for attorney fees. The defendant filed a brief in opposition to that motion on November 8, 2002. A reply brief for the plaintiff was filed on November 18, 2002. The defendant with leave of court filed a sur-reply brief on December 10, 2002.

By an Order filed on November 27, 2002, the parties were directed to request a hearing on the motion for attorney fees on or before December 9, 2002, and were instructed that in the absence of a request for a hearing the court would decide the motion on the record before the court and the documents attached to the papers filed in support of and in opposition to the motion. No request for a hearing was filed.

In the plaintiff's motion, $61,958.68 in attorneys' fees are sought for the preparation, prosecution and appeal of the motion for contempt. In opposing the amount of fees requested by the plaintiff, the defendant argues that the portion of the fees that is for appellate work should not be awarded by this court. That amount is $24,349.00 in fees. The defendant bases its opposition to an order of this court to it to pay for appellate work attorney fees upon Third Circuit Rule of Appellate Procedure 108.1.

Third Circuit Rule of Appellate Procedure 108.1 provides, in pertinent part, that "[e]xcept as otherwise provided by statute, all applications for an award of attorney's fees and other expenses relating to a case filed in this court, regardless of the source of authority for

5

assessment, shall be filed within thirty (30) days after the entry of this court's judgment, [extended if a petition for rehearing is filed]. . ." The Rule further provides that "[s]uch application shall be filed with the clerk in the time set forth above whether or not the parties seek further action in the case or further review from any court."

Rule 108.1 is cited in the two cases that we will discuss.

The first case is a case from the Eastern District of Pennsylvania - *Wolgin v. Kennington Ltd, Inc.*, 2001 WL 1298996 (E.D.Pa. 2001). In *Wolgin* the Eastern District Court cites Rule 108.1, states that the rule is clear, and concludes that a request for appellate fees is not proper in the district court.

The second case is a Third Circuit case - *Planned Parenthood of Central NJ v. Attorney General of NJ*, 297 F.3d 253 (3d Cir. 2002). The Court of Appeals cites its Rule 108.1 in a footnote. *Id.* at 261 n.2. In the footnote, the Court rejected an argument that the fee application with respect to appellate work in that case was untimely. The Court noted that it had previously remanded the question of appellate attorneys'

6

fees to the district court and that thus the issue of appellate attorneys' fees was to be decided along with other attorneys' fees issues and that the appellate fees issue was timely to the same extent as was the other attorneys' fees issues.

Neither case is very helpful in addressing the current issue. Although the *Wolgin* case contains no analysis, its conclusion that pursuant to Rule 108.1 the fee application must be filed in the Third Circuit could be viewed as a reasonable interpretation of the rule. However, we note that the Eighth Circuit has ruled that a rule similar to Rule 108.1 in that Circuit does not deprive a district court of jurisdiction to decide the issue of appellate attorney's fees if the Eighth Circuit has not decided the issue. *Little Rock School District v. Arkansas*, 127 F.3d 693, 696 (8th Cir. 1997) ("Therefore, despite our local rule, the district courts retain jurisdiction to decide attorney's fees issues that we have not ourselves undertaken to decide."). That the Third Circuit may view its rule in a similar manner to the Eighth Circuit may be inferred from *Yaron v. Twp. of Northampton*, 963 F.2d 33 (3d Cir. 1992). In *Yaron*, the issue was whether the district court could award attorney's fees for appellate work after the Third Circuit had denied a motion for such fees. The Third Circuit held that

7

"[i]n this Circuit, once this Court has entertained an application for appellate attorney's fees, a district court may not." *Id.* at 37. The Court reasoned that "an order denying fees on appeal is analogous to a remand with a specific mandate" that the district court is required to follow. *Id.* The Court did not cite the version of Rule 108 that was in effect at the time [Rule 27.1] and did not hold that the district court did not have the authority to decide the issue of appellate fees. Rather, the Court held only that once it had decided the issue, the district court could not.

Rule 108 sets forth the procedure that should be followed in seeking appellate fees. It does not clearly deprive the district court of jurisdiction or authority to address the issue of appellate fees.

However Rule 108 clearly does set forth a 30 day time limit (extended if there is a petition for rehearing), and if the request for appellate fees does not meet that time limit it is untimely.

Since here the application for attorney fees incurred in the appellate phase of the contempt motion litigation is

8

untimely, it should not be granted as to such fees. The amount of appellate attorney fees of the plaintiff, $24,349, will not be awarded to the plaintiff.

Addressing the issues advocated by the defendant concerning the attorneys' fees of the plaintiff for district court work during the contempt phase, the law is set forth accurately by the parties.

As the party requesting fees, the plaintiff bears the burden of showing that the request is reasonable. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). An application for attorneys' fees "is required to be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1037 (3d Cir. 1996). As part of a review of an application for attorneys' fees, the district court "must review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary." *Local Union No. 1992 of The International*

*Brotherhood of Electrical Workers v. The Okonite Co.*, 34 F.Supp. 2d 230, 236 (D. N.J. 1998).

The defendant contends that it should not have required six different attorneys in three different law firms to prepare, file and argue a contempt motion for the plaintiff. That assertion of fact is not self-evident, and the defendant did not avail itself of the opportunity to cross-examine the plaintiff's witnesses and to present its own evidence supporting its assertion.

No hearing was requested by the defendant upon the court's extension to the parties of the opportunity to request a hearing.

The plaintiff's affidavits support the finding that the attorneys' fees for work in the district court upon the motion of the plaintiff for contempt in the amount of $37,609.68 were reasonable attorneys' fees.

AO 72A
(Rev. 8/82)

IT IS ORDERED that the defendant shall pay to the plaintiff attorneys' fees incurred by the plaintiff in the amount of $37,609.68.

> /s/ J. Andrew Smyser
> J. Andrew Smyser
> Magistrate Judge

Dated: January 2, 2003.